912 A.2d 762

Mia E. MAYER

v.

Ray F. GARMAN, III.

Petition of Waverly Deans.

Supreme Court of Pennsylvania.

Submitted July 7, 2006.

Decided Aug. 4, 2006.

---

David Jonathon Steerman, Esq., Jonathan W. Hugg, Esq., Robert I. Whitelaw, Esq., Maris J. Weiner, Esq., Obermayer Rebmann Maxwell & Hippel L.L.P., Philadelphia, for Waverly Deans.

Walter Weir, Esq., Vito F. Canuso, Jr., Esq., Philadelphia, for Ray F. Garman, III.

Scott M. Orloff, Esq., Willig, Williams & Davidson, Philadelphia, for Mia E. Mayer.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

PER CURIAM.

This emergency application was filed pursuant to Rule of Appellate Procedure 3309, Sections 502 and 726 of the Judicial Code, and this Court's inherent King's Bench supervisory power over inferior tribunals. In the application, Petitioner Waverly Deans requests that this Court assume plenary jurisdiction and stay litigation currently pending in the Family Court Division of the Court of Common Pleas of Philadelphia County, at December Term, 1996, No. 8486; review several orders of the common pleas court entered in the course of such litigation; and issue a writ of prohibition preventing that court from purporting to exercise personal jurisdiction over her.[1]

The underlying dispute consists of ongoing divorce, support, and equitable distribution litigation that has continued in the common pleas court for approximately ten years. During recent proceedings in that matter, the trial court questioned

---

1. Petitioner also requested that we assume plenary jurisdiction over an appeal from one of the common pleas court's orders, lodged in the Superior Court at 567 EDA 2006. As the Superior Court has since quashed the appeal (by *per curiam* order dated July 14, 2006), that request is now moot.

whether Husband Ray F. Garman, III, has an interest in certain financial assets owned, at least nominally, by Petitioner, who is Husband's paramour and who has at all relevant times lived in Hong Kong.[2] In order to explore the ownership issue, the common pleas court requested Wife Mia E. Mayer to serve interrogatories upon Petitioner in order to "trace" the ownership of the assets in question. Accordingly, the court entered an order dated February 6, 2006, *sua sponte* joining Petitioner as an indispensable third party, imposing a freeze on certain of her assets, and indicating that there would be no stay pending any appeal of such order. No original process, however, was ever served upon Petitioner, nor did the court order that such process be served.

On March 1, 2006, Petitioner timely appealed the joinder order to the Superior Court. Notably, however, the trial court did not certify the order under Rule of Appellate Procedure 311 as interlocutory.[3] Subsequently, the Superior Court remanded the matter for a Rule 1925(a) opinion, while retaining jurisdiction.

On May 18, 2006, the trial court issued its opinion in support of the February 6th order, stating that its basis for joining Petitioner was that her name had been "frequently mentioned" during testimony as a joint owner on certain bank accounts, as a "transferee of ownership of various corporate entities," and as an individual who was actively involved in Husband's life and finances. Trial Court op. at 5. The court did not cite to any procedural rule which would permit it to join Petitioner as a party on its own motion, and without service of process. In fact, the court acknowledged that the

**2.** Although a divorce decree has apparently been entered, the terms "Husband" and "Wife" are used here for convenience.

**3.** Rule 311 states, in relevant part:
> **(b) Order sustaining venue or personal or in rem jurisdiction.** An appeal may be taken as of right from an order in a civil action or proceeding sustaining the venue of the matter or jurisdiction over the person or over real or personal property if: . . . (2) the court states in the order that a substantial issue of venue or jurisdiction is present.

Pa.R.A.P. 311(b)(2). It is not clear if or when Petitioner requested that the trial court modify its February 6th order to state that a substantial issue of jurisdiction was present.

manner in which it *sua sponte* joined Petitioner "may have" violated her due process rights and that it otherwise had disregarded ordinary procedure. However, the court repeatedly suggested that its actions were justified in furtherance of some higher aim. *See id.* at 13–14; *see also id.* at 3 (stating that the court's overarching mandate is to "effectuate[ ] economic justice" (quoting 23 Pa.C.S. § 3102(a)(6))). The court ultimately suggested that the due process ·issue could be litigated at a later date as a means of determining asset ownership:

> The issue of *"sua sponte* joinder" still has not been directly addressed. As noted earlier, "the law of Domestic Relations is different" (supra. Pg.2). In most civil and criminal actions, counsel usually file Petitions to Join Parties. Here, the record reflects, *no one did file.*

> Query: Could the Court "effectuate economic justice" in this case without its *sua sponte* joinder? No! Clearly, No! Decisive action is and was required and this Court acted. Was such action reversible error or harmless error? Harmless error, indeed, because Ms. Deans can still present evidence to this Court as to why she should not be joined as a party (absent the appeal and if Remanded.) If this were accomplished, this Court and counsel, upon Remand, could litigate the ultimate question ... Who owns the asset?

Trial Court op. at 14–15 (emphasis and ellipsis in original).

Although the court expressed a willingness to allow the parties to litigate the due process issue, it not only denied Petitioner's request for a protective order, but also required disclosure of documents and information concerning any payments that Petitioner had made to her own counsel for his services. When Petitioner failed to comply, the trial court entered ·a rule to show cause why Petitioner and her counsel should not be held in contempt on June 23, 2006, returnable June 30, 2006.

On June 28, 2006, Petitioner filed the present application, requesting the relief stated above, and averring that she had not received notice of the rule until that day. By *per curiam*

order dated June 30, 2006, this Court stayed any further actions by the trial court against Petitioner or her counsel and directed Respondents to file responsive pleadings on or before July 7, 2006. Husband's counsel thereafter submitted a letter stating that Husband lacks the financial means to formally respond to the present Application, as he is a debtor in bankruptcy proceedings pending in federal court. The letter stated that Husband—who was incarcerated in August 2005 after having been found in civil contempt for failure to pay ordered support, and remains incarcerated with a purge factor of $3,000,000—opposes the Application and "desires full disclosure of any information that will enable [Wife] and the trial court to understand that he simply does not have the present financial ability to comply with the present Orders that exist against him." Reply Letter of July 7, 2006. Wife filed a substantive response rehearsing at length the history of the underling litigation and arguing that Petitioner waived any objection to personal jurisdiction by attending one or more court proceedings and entering into an "agreed order" to sell her interest in the assets frozen by the court with the proceeds to be paid over into an escrow account. Wife maintains that the central issue raised by the present Application is limited to whether Petitioner consented to the trial court's authority to determine the ownership and distribution of such proceeds, and thereby waived any objection to *in personam* jurisdiction. *See* Answer of Respondent (Wife) at 10.

The issues of the court's personal jurisdiction over Petitioner and authority to determine asset ownership and distribution stem from the more central question raised by this Application, namely, whether the trial court acted *ultra vires* in purporting to *sua sponte* join Petitioner as an additional defendant to the litigation without service of process. Ordinarily, when an additional defendant is joined in civil litigation, the party seeking joinder must comply with Rules of Civil Procedure 2251–2255, which require the filing of a praecipe for a writ or a complaint, *see* Pa.R.C.P. 2252(b), and specify that "[t]he procedure, including pleadings, between the party joining an additional defendant and the additional defen-

dant shall be the same as though the party joining the additional defendant were a plaintiff and the additional defendant were a defendant." Pa.R.C.P. 2255(a); *see also* Pa. R.C.P. 2231(d) (providing that "the joinder of parties in any action shall not affect the procedural rights which each party would have if suing or sued separately"). Thus, a party cannot be made an additional defendant in a case unless the appropriate form of original process is served upon such party. *See generally* Pa.R.C.P. 1007 (requiring the filing of a complaint or a praecipe for a writ of summons in order to commence an action); Pa.R.C.P. 2252(b) (mandating the filing of a complaint or a praecipe for a writ in order to join a non-party as an additional defendant). This gives the party sought to be joined notice of, *inter alia,* the fact of court proceedings potentially affecting his or her rights, the factual averments that underlie the claims for relief, the amount in controversy, and the relief requested. The party then has an opportunity to object preliminarily so as to challenge the court's subject-matter or personal jurisdiction and test the legal sufficiency and/or specificity of the pleadings, among other things. *See* Pa.R.C.P. 1028 (relating to preliminary objections). Through responsive pleadings, the party may also dispute the complaint's factual allegations, *see* Pa.R.C.P. 1029, introduce new matter, *see* Pa.R.C.P. 1030, assert counterclaims, *see* Pa.R.C.P. 1031, and preserve any available objections and defenses, *see* Pa.R.C.P. 1032; *cf. Cintas Corp. v. Lee's Cleaning Services, Inc.,* 549 Pa. 84, 700 A.2d 915, 917–18 (1997) ("Service of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed. . . . Thus, improper service is not merely a procedural defect that can be ignored . . . ." (internal citations omitted)). Here, the court did not require that any original process be served upon Petitioner, apparently considering its order sufficient to perfect her joinder as an additional defendant.

 A writ of prohibition is a common law writ whose principal purpose was originally limited to "prevent[ing] an inferior judicial tribunal from assuming a jurisdiction with

which it [was] not legally vested in cases where damage and injustice would otherwise be likely to follow from such action." *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 61 A.2d 426, 428 (1948). The scope of the writ has been extended to "encompass situations in which an inferior court, which has jurisdiction, exceeds its authority.... This latter situation has been termed an 'abuse of jurisdiction.'" *Capital Cities Media, Inc. v. Toole,* 506 Pa. 12, 483 A.2d 1339, 1342 (1984); *see also Glen Mills Schools v. Court of Common Pleas of Phila. County,* 513 Pa. 310, 520 A.2d 1379, 1381 (1987) ("Beyond the situation where the lower court wholly lacks jurisdiction in a matter, a writ of prohibition is proper where the inferior tribunal abuses its jurisdiction."). A writ of prohibition is to be used with "great caution and forbearance." *Carpentertown,* 61 A.2d at 430. The test for granting the writ is two-part: there must be no adequate remedy at law, and the requested relief must be necessary "to secure order and regularity in judicial proceedings." *Glen Mills Schools,* 520 A.2d at 1381 (quoting *Capital Cities Media,* 483 A.2d at 1342–43). Petitioner asserts that this test is presently satisfied because the lack of any process served upon her, combined with the trial court's determination to assert personal jurisdiction over her and enforce discovery orders against her on pain of civil contempt, has deprived her of any ability to protect her constitutional rights, and has adversely affected her liberty and property interests:

The situation created by the trial court has foreclosed the normal avenues through which the Pennsylvania Rules of Civil Procedure allow a litigant to challenge jurisdiction. Without the filing of a writ of summons [Petitioner] cannot obtain a rule for the filing of a complaint. *See* Pa.R.C.P. 1037. Without the filing of a complaint, the alleged claims against [Petitioner] are not in writing, as the Rules of Civil Procedure assume they must be. The lack of written claims ... not only presents a serious due process problem, but also violates the requirement of the Rules that pleadings set forth the "material facts" of the causes of action alleged "in a concise and summary form." Pa.R.C.P. 1019(a). Fur-

thermore, without a complaint, there is nothing against which [Petitioner] may file preliminary objections. Pa. R.C.P. 1028. Without preliminary objections, [Petitioner] waives any attack on the trial court's ... jurisdiction and the absence of proper service upon her. Pa.R.C.P. 1032. Indeed, without the filing of original process, there is no document to serve on [Petitioner]. Nor can [Petitioner], without the filing of a pleading, remove the alleged claims to federal court, if appropriate. 28 U.S.C. § 1446. In short, the trial court's decision to proceed against [Petitioner] without original process and service has left [Petitioner] with no opportunity to seek redress through the normal procedures of Pennsylvania Courts.

Application at 6–7, ¶¶ 13–14.[4]

We believe that the actions of the trial court implicate the requested relief, and that order and regularity in judicial proceedings will be best protected by granting the requested writ. In *sua sponte* joining Petitioner as an additional defendant without any process or service, the trial court appears to have viewed the rules of civil procedure adopted by this Court, as well as any constitutionally-imposed due process restrictions, as optional so long as the court is earnestly attempting to "effectuate economic justice." In spite of Petitioner's objections, the court determined to continue exercising jurisdiction over Petitioner and her assets. The court acknowledged that its actions may have violated due process, but failed to certify its joinder order as raising a substantial jurisdictional issue. As Petitioner has been unable to obtain either merits review of that issue, *see supra* note 1, or a stay of proceedings, Petitioner plainly has no adequate legal remedy. Finally, ensuring that the basic rules of civil procedure are observed goes to the heart of securing order and regularity in judicial proceedings. Thus, we agree with Petitioner that the two-part test is satisfied.

4. In her answer, Wife does not counter Petitioner's argument, but simply denies that the trial court lacks personal jurisdiction over Petitioner or her assets, and states that, in any event, the joinder order was issued on a "temporary basis" and "without prejudice." Answer at 19.

Accordingly, the Application is granted insofar as it requests a writ of prohibition, and a writ of prohibition is issued. The portion of the trial court's February 6, 2006 order joining Petitioner as a party and freezing her assets is hereby vacated. The Application is denied to the extent that it asks this Court to assume plenary jurisdiction and stay the underlying litigation in the common pleas court. The previous stay issued by this Court on June 30, 2006, is lifted as it is now moot.

Justice CASTILLE files a joining concurring opinion in the above matter.

Justice NEWMAN concurs in the result.

Justice CASTILLE, concurs.

The Per Curiam Opinion tracks the standard governing issuance of a Writ of Prohibition as I set it forth in my Dissenting Opinion in *Public Defender's Office of Venango County v. Venango County Court of Common Pleas,* 893 A.2d 1275, 1282–1291 (2006) (Castille, J., dissenting). Because the Per Curiam Opinion explains why this Court's exercise of jurisdiction under that standard is appropriate, and explains why prohibition must issue, I join. I view the exercise of jurisdiction in *Venango County* as aberrational.