ESTATE OF Alice BROWN, Incapacitated Person.

Appeal of Lorie Pearl.

Superior Court of Pennsylvania.

Argued July 13, 2011.
Filed Oct. 17, 2011.

Christina J. Corr and Norman Mittman, Montgomeryville, for appellant.

* Former Justice specially assigned to the Supe-

Richard D. Magee, Doylestown, for Fogg, participating party.

BEFORE: STEVENS, P.J., MUSMANNO, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

*Pro se* Appellant, Lorie Pearl, appeals from the decree entered in the Court of Common Pleas of Delaware County. This appeal arises from a case involving the estate of Alice Brown ("Mother"), the mother of Appellant and an incapacitated person. The decree assessed a surcharge against Appellant and her husband, Kenneth Pearl ("Husband"), a non-party to this case. The decree also denied in part Appellant's request for reimbursement. We hold that under the unique facts of this case, including Appellee David Fogg's failure to raise the issue of Appellant's standing, Appellant may challenge the surcharge against Husband. We further hold the trial court exceeded its authority when it imposed a surcharge on Husband. Because the certified record substantiates the trial court's findings, we discern no abuse of discretion in its decision to deny Appellant's request for reimbursement for electricity and natural gas bills. Finally, we hold Appellant waived her remaining two issues. Accordingly, we vacate the trial court's decree in part and affirm in part.

The facts and procedural history follow:

Pursuant to a petition for the appointment of a guardian of the estate and person of an alleged incapacitated person filed by [Appellant,] a decree was entered on January 27, 2007 appointing [Appellant] as plenary guardian of the person and estate of [Mother.] This decree dated January 27, 2007 allowed for all the standard powers and duties that accompany this type of appointment. During her tenure as plenary

rior Court.

guardian of the person and estate of Mother, [Appellant] received approximately ... $353,134[ ] in principal and ... $12,519[ ] in income. The bulk of this money was received by virtue of the sale of the home of Mother pursuant to a decree signed by [the trial c]ourt on January 17, 2008 allowing for the sale of the real estate as 124 Rodney Circle, Bryn Mawr, Pennsylvania ["Rodney Circle Property"].

In a period of less than two years the afore referenced principal and income had dissipated to the point that by the end of calendar year 2009 only approximately ... [$5,592] remained.

Trial Ct. Op., 3/1/11, at 1 (some capitalization omitted). Appellant and Husband expended $159,901 of the funds to purchase a townhouse in Florida ("Florida Property"). N.T. Trial, 5/4/10, at 17–18; R. at 656a–57a.

On November 13, 2009[, Appellee] filed a petition for a review hearing pursuant to 20 Pa.C.S.A. [§ ] 5512.2 alleging, *inter alia*, that [Appellant] had violated her fiduciary duties as guardian, that she had not acted in the best interest of [Mother] and that she should be removed as plenary guardian of the estate and person of [M]other because she was wasting and/or mismanaging the estate and had otherwise failed to perform duties imposed by law.

[The trial court] conducted hearings ... on March 26, 2010 and May 4, 2010. Pending those hearings[,] the [trial court] had appointed [Appellee] as the successor plenary guardian of the estate of Mother by a decree dated December 23, 2009.[The] decree, which was issued pursuant to an agreement of [Appellee] and [Appellant], further provided that [Appellant] shall provide the [trial court] with a complete informal accounting of her actions as plenary guardian of the estate from the time of her appointment of January 22, 2007 until December 22, 2009, that [Appellant] shall execute all documents necessary to facilitate the immediate conveyance of [Florida Property,] purchased in her name with assets of [Mother's,] to [Mother,] and scheduled a further hearing in February, 2010 on the petition for review and allowing [Appellant] to file a petition[ ] for allowance to be heard at the same time.

Trial Ct. Op. at 1–2 (italics added and some capitalization omitted).

At trial, Husband testified that he and Appellant purchased a house in Norristown, Pennsylvania ("Oakdale Property") [1] for Mother to rent after her house, the Rodney Circle Property, was sold. N.T. Trial, 3/26/10, at 66; R. at 441a. In order to secure a down payment for the Oakdale Property, Appellant and Husband refinanced a second mortgage on their home. *Id.* at 67 & 159; R. at 442a & 534a. Husband intended the amount of Mother's rent to equal the cost of the monthly mortgage payment and utilities at the Oakdale Property. *Id.* at 159; R. at 534a.

[After trial concluded and] the parties had sufficient time to submit proposed [findings of fact] and memorand[a] in support of same, [the trial court] entered decrees on October 27, 2010 and December 8, 2010. The decree of October 27, 2010 provided for the removal of [Appellant] as the plenary guardian of the person of Mother and naming [Appellee] as the successor plenary guardian of the person of [Mother]. The decree of December 8, 2010 ruled on the petition for allowance and provided numerous findings and conclusions approving some of the expenditures and denying others. Included in those findings and conclusions was a surcharge of ... $58,396.42[ ] against [Appellant] and

1. The property was located on Oakdale Road.

part of this amount also against [Husband]. More specifically the [trial court] concluded that the surcharge should be apportioned as follows: ... $22,437[ ] in surcharges were assessed against [Appellant] and [Husband] and an additional ... $35,959.42[ ] in surcharges were assessed only against [Appellant. The trial court] provided a detailed explanation as to the amounts surcharged against [Husband] as the record clearly demonstrated that disallowed expenditures would have benefited [Husband and Appellant].

Trial Ct. Op. at 2–3 (some capitalization omitted).

The trial court held that because Husband was unjustly enriched from Appellant's improper use of Mother's assets, he was liable to the estate of Mother under a constructive trust theory. *Id.* at 5. The court stated Husband "undoubtedly benefited by a mortgage being paid with [Mother's] funds on real estate he and [Appellant] owned and wherein he was one of the person[s] responsible to pay the mortgage." *Id.* Accordingly, to avoid unjust enrichment, the trial court stated the surcharge against Husband was appropriate. *Id.*

On January 6, 2011, Appellant timely appealed *pro se* from the December 8, 2010 decree only, and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. She raises the following issues on appeal:

Whether the trial court erred in its determination that a surcharge in the amount of ... $22,437[ ] would be assessed against [Husband], who is not a party to the court proceeding and owed no fiduciary duty to [Mother].

Whether the court erred in its reduction and/or denial of Appellant's request for compensation and/or reimbursement,

and by assessing a surcharge in the amount of ... $58,396.42[ ] against Appellant....

Appellant's Brief at 19 (some capitalization omitted).

■ In her first issue, Appellant argues the trial court erred when it applied a constructive trust theory to assess a surcharge against Husband. Appellant also suggests the Oakdale Property was purchased for Mother's benefit and Mother has yet to make any rental payments to Husband. For the following reasons, we agree Appellant is entitled to relief.

■ As a prefatory matter, we examine whether Appellant has standing to challenge the trial court's exercise of personal jurisdiction over Husband. In *In re deYoung*, 588 Pa. 194, 903 A.2d 1164 (2006), the Commonwealth Court *sua sponte* raised the issue of whether the objector had "standing to bring an objection to the Statement of Financial Interests attached to the Nomination Petition of [the candidate]." *Id.* at 1165. On appeal, our Supreme Court disagreed and stated the court "is prohibited from raising the issue of standing *sua sponte.*" *Id.* at 1168.

■ Unlike personal jurisdiction, the issue of standing may be waived by a party "if not objected to at the earliest possible opportunity." *Thompson v. Zoning Hearing Bd. of Horsham Twp.*, 963 A.2d 622, 625 n. 6 (Pa.Commw.2009).[2] In *Thompson*, the Zoning Hearing Board of Horsham Township ("Board") "held a hearing on the landowner's variance requests, at which the Board granted [Edwin R.] Thompson party status without any objection by [the landowner]." *Id.* at 624. "Thompson appealed [the Board's decision] to the trial court, and the landowner filed a

**2.** Although decisions by the Commonwealth Court are not binding on this Court, they may be persuasive. *See, e.g., Citizens' Ambulance Serv. Inc. v. Gateway Health Plan*, 806 A.2d 443, 447 n. 3 (Pa.Super.2002).

motion to quash the appeal, arguing that Thompson lacked standing." *Id.* "[T]he trial court denied [the landowner's] motion to quash, reasoning that [the landowner] waived any challenge to Thompson's standing by failing to object" at the initial hearing. *Id.* The Commonwealth Court affirmed the trial court's denial. *Id.* at 625.

Instantly, this Court cannot raise the issue of Appellant's standing *sua sponte. See In re deYoung*, 903 A.2d at 1168. Appellee, furthermore, did not object to Appellant's standing to raise arguments on behalf of Husband. Because Appellee did not object to Appellant's standing at the earliest opportunity, he waived any challenge. *See Thompson*, 963 A.2d at 624. Having resolved standing, we determine whether the trial court had personal jurisdiction over Husband.

■ "A court must have personal jurisdiction over a party to enter a judgment against it. Action taken by a court without jurisdiction is a nullity." *Vogt v. Liberty Mut. Fire Ins. Co.*, 900 A.2d 912, 917 (Pa.Super.2006) (punctuation and citation omitted). For example, in *Mayer v. Garman*, 590 Pa. 268, 912 A.2d 762 (2006), in an "ongoing divorce, support, and equitable distribution" matter, the trial court entered an order, "*sua sponte*, joining [the petitioner] as an indispensable third party, imposing a freeze on certain of her assets, and indicating that there would be no stay pending any appeal of such order." *Id.* at 763–64. The petitioner, who resided in Hong Kong, was the former husband's paramour. *Id.* at 763. The trial court stated "its basis for joining [the petitioner] was that her name had been 'frequently mentioned' during testimony as a joint owner on certain bank accounts, as a

'transferee of ownership of various corporate entities,' and as an individual who was actively involved in [the husband's] life and finances." *Id.* at 764.

Prior to this order, the petitioner was not a party to the proceedings. *Id.* No original process was ever served upon the petitioner, and the trial court did not order that such process be served. *Id.* The trial court did not cite any "procedural rule which ... permit[ted] it to join [the petitioner] as a party on its own motion, and without service of process." *Id.* The court conceded that its *sua sponte* action "may have" violated the petitioner's due process rights, but maintained "its action was justified in furtherance of some higher aim." *Id.*

■ On appeal, the *Mayer* Court issued a writ of prohibition [3] preventing the trial court from exercising personal jurisdiction over the petitioner. *Id.* at 767. The *Mayer* Court first reasoned the petitioner could not obtain either merits review of her joinder as an indispensable third party or a stay of proceedings. *Id.* Second, "ensuring that the basic rules of civil procedure [were] observed [went] to the heart of securing order and regularity in judicial proceedings." *Id.* A party, the *Mayer* Court observed, "cannot be made an additional defendant in a case unless the appropriate form of original process is served upon such party." *Id.* at 765. Accordingly, because the trial court exceeded its authority, the *Mayer* Court vacated the trial court's order joining the petitioner. *Id.* at 767.

In this case, we hold the trial court exceeded its authority when it assessed a surcharge against Husband, who was not named as a party to the suit, served with

---

**3.** "A writ of prohibition is to be used with great caution and forbearance." *Mayer*, 912 A.2d at 766 (internal quotation marks omitted). It is applicable in situations in which an inferior court exceeds its authority. *Id.* "The test for granting a writ is two-part: there must be no adequate remedy at law, and the requested relief must be necessary to secure order and regularity in judicial proceedings." *Id.* (internal quotation marks omitted).

process, or given the opportunity to contest the surcharge. The instant trial court, similar to the trial court in *Mayer*, *sua sponte* haled Husband, a non-party, into court and levied a surcharge against him. *Cf. Mayer*, 912 A.2d at 764. Analogous to the petitioner in *Mayer*, Husband did not receive original service of process. *Cf. id.* The trial court, similar to the trial court in *Mayer*, cited no procedural rule permitting it to join Husband without service of process. *Cf. id.* Additionally, as in *Mayer*, Husband had no opportunity to object to the court's exercise of personal jurisdiction over him. *Cf. id.* at 765. Finally, although Husband testified as to the alleged improper distribution of Mother's assets and the legitimacy of Appellant's reimbursement claims, he did not, similar to the petitioner in *Mayer*, have an opportunity to challenge to the imposition of the surcharge. *Cf. id.* at 765–66. Accordingly, we hold the trial court improperly exercised jurisdiction over Husband without proper service of process. Thus, we vacate the portion of the trial court's decree imposing a surcharge against Husband.

In her second issue, Appellant argues that the trial court erred in assessing a surcharge, totaling $58,396.42, against her. The trial court apportioned the surcharge as follows: $22,437 assessed against Appellant and Husband, and $35,959.42 against Appellant only. Appellant challenges the surcharge as a whole, and alleges three trial court errors. We address them in turn.

 First, Appellant argues the trial court erred in disallowing her claims for $1,926 and $2,100 for electricity and natural gas bills because they were for the Rodney Circle Property, Mother's former home. When an appellant challenges a decree entered by the Orphans' Court, our standard of review "requires that we be deferential to the findings of the Orphans' Court." *In re Estate of Miller*, 18 A.3d 1163, 1169 (Pa.Super.2011) (*en banc* ).

> [We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Id.* (alterations and citation omitted). Evaluating the reasonableness of the amount of a surcharge is within the province of a trial court. *In re Wade's Estate*, 343 Pa. 520, 23 A.2d 493, 495 (1942). Absent an abuse of discretion, we will not disturb a trial court's finding. *Id.*

 Instantly, the trial court granted reimbursement for electricity and natural gas bills directly billed to Appellant at the Rodney Circle Property. *See* Appellant's Ex. P–19; R. at 1064a–71a. It denied reimbursement for Appellant's claims for the $1,926 and $2,100 charges because they were billed to Appellant at Appellant's home under a different account number. *See id.*; R. at 1072a–74a. The trial court held that Appellant did not establish those bills were for electricity and natural gas used at the Rodney Circle Property. Trial Ct. Decree, 12/8/10, at 8. Because there is sufficient evidence of record to support the trial court's findings, we discern no abuse of discretion and affirm the denial of Appellant's claims for reimbursement of $1,926 and $2,100 for electricity and natural gas bills.[4] *See In re Estate of Miller*,

---

4. Because Appellant raised no argument that the same natural gas meter identification number appears on both accounts, she has waived it on appeal.

18 A.3d at 1169; *In re Wade's Estate,* 23 A.2d at 495.

■ Second, Appellant alleges the trial court erred in its calculation of fair market rent and maintenance for Mother while she lived at the Oakdale Property. Appellant argues that the trial court improperly based its determination on Appellee's unsubstantiated and uncorroborated research. Appellant, however, did not object to the admission of this evidence at trial. *See* N.T. Trial, 5/4/10, at 252–53; R. 892a–93a. Accordingly, she waived the issue. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114, 116–17 (1974) (holding failure to object in timely fashion at trial results in waiver of issue for appeal).

Third, Appellant contends she is entitled to a credit for rent, utilities, and maintenance for the time Mother lived at the Oakdale Property from December 2009 through May 2011. Appellant, however, failed to raise the issue in her Pa.R.A.P. 1925(b) statement and thus, she has waived it. *See Hess v. Fox Rothschild, LLP,* 925 A.2d 798, 804 (Pa.Super.2007) ("[A]ny issue not raised in an appellant's [Pa.R.A.P.] 1925(b) statement will be deemed waived for purposes of appellate review."). For these reasons, we vacate in part and affirm in part the decree.

Decree vacated in part and affirmed in part.