J-S64015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| B.V. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| G.A. | : | No. 1130 WDA 2019 |

Appeal from the Order Entered July 1, 2019
In the Court of Common Pleas of Crawford County Civil Division at No(s):
FD 2018-442

BEFORE:   BOWES, J., LAZARUS, J., and PELLEGRINI, J.*

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 29, 2020**

B.V. ("Father") appeals from the July 1, 2019 custody order that awarded maternal grandmother, G.A. ("Grandmother"), primary physical and shared legal custody of his minor son, K.N.M.  We affirm.

Father and R.M. ("Mother") never married.  K.N.M. was born in August 2009 of Mother and Father's intermittent romantic liaisons that formed while stationed at the same military base.  The relationship ended prior to the child's birth, and although Father disputed paternity, he visited the child briefly in the maternity ward.  Between August 2009 and 2015, Father's contact was limited to three visits and one telephone conversation.  Eventually, Father conceded paternity, and in 2016, the paternal grandmother arranged for Father to interact with K.N.M. during a five-day visit in her home in Florida

_____

* Retired Senior Judge assigned to the Superior Court.

with Father, his wife, S.V. ("Stepmother"), and their three minor sons. Father did not contact K.N.M. again until after Mother's death following a drug overdose during November 2018.

Meanwhile, for the first nine years of K.N.M.'s life, Mother maintained sole legal and physical custody of K.N.M. During this period, Mother married J.G. and had two additional children. Since 2016, Mother and K.N.M. resided recurrently with Grandmother and Grandmother's paramour, E.B., in Conneautville, Pennsylvania. First, upon moving to Pennsylvania, Mother, J.G., K.N.M., and his two-half siblings lived with Grandmother for several months before Mother acquired her own home. Thereafter, in 2017, the half-siblings relocated to Georgia with J.G., and Mother and K.N.M. returned to Grandmother's residence until Mother's death.

On December 4, 2018, Father, who resides in Cache, Oklahoma, with Stepmother and their three sons, filed a complaint in custody. Father did not challenge Grandmother's standing to seek primary physical custody or legal custody. The trial court scheduled a mediation conference, but the parties were unable to reach an agreement.

On February 14, 2019, the trial court issued a temporary order awarding Grandmother shared legal custody and primary physical custody. Father was granted periods of partial physical custody in Crawford County, Pennsylvania, as well as contact with K.N.M. through telephone calls, Facetime, Skype, or other means, at times to be arranged by agreement.

Father did not contest Grandmother's standing to seek custody or participate in the ensuing custody trial, in which he, Stepmother, and Grandmother testified.

On July 1, 2019, the court entered a final custody order awarding Grandmother and Father shared legal custody and awarding Grandmother primary physical custody. The order included provisions to allow Father to attempt to build a relationship with K.N.B. in Crawford County, Pennsylvania, and by telephone. Father timely filed a notice of appeal and statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father neglected to challenge Grandmother's standing in the Rule 1925(b) statement.

On appeal, Father presents the following issues for our review:

1. Whether the trial court erred as a matter of law or abused its discretion in awarding primary custody to a grandmother where the presumption of law is that custody of a child is with the parent.

2. Whether the trial court erred as a matter of law or abused its discretion in determining facts that were not of record in establishing that the grandmother should have primary custody for example that the father and his wife had mental illness [diagnoses] and that the child was scared of [stepmother].[1]

Father's brief at 5. While not included in his statement of questions presented, the penultimate paragraph of his brief asserts for the first time on appeal that

---

[1] Although Father raises these two discrete issues, his argument section attacks the court's analysis on each custody factor. For ease of analysis, we will address the court's analysis of each custody factor in turn.

Grandmother cannot satisfy the statutory grounds to seek physical or legal custody under § 5324. For reasons explained *infra*, this issue is waived.

The scope and standard of review in custody matters is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa.Super. 2013).

Initially, prior to reaching the merits of Father's appeal, we address Father's contention that Grandmother did not have standing to receive custody under 23 Pa.C.S. § 5324. **See** Father's brief at 18-19. Father argues that the court should have determined Grandmother's standing prior to the commencement of the trial. **Id**. For several reasons, this issue is waived.

First, Father failed to assert this issue in the trial court. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Our High Court rejected the notion that statutory standing is so intertwined with subject matter jurisdiction so as to

overcome waiver. *In re Nomination Petition of deYoung*, 903 A.2d 1164 (Pa. 2006). Thus, Father waived his challenge to Grandmother's standing by failing to object to it at the earliest possible opportunity. *In re Adoption of Z.S.H.G*., 34 A.3d 1283, 1289 (Pa.Super. 2011) (finding appellant waived claim by failing to challenge standing until after decree became final); *see also In re Estate of Brown*, 30 A.3d 1200, 1204 (Pa.Super. 2011) (standing may be waived if not objected to at the earliest opportunity).

Moreover, assuming that Father asserted this issue before the trial court, the issue is waived because Father neglected to comply with two appellate procedural rules. First, Father did not include this issue in his concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) in this Children's Fast Track appeal. Pursuant to 1925(b)(4)(ii), any issue not raised in the statement is deemed waived. *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1999). Second, the rules of appellate procedure direct that an appellant's brief include, *inter alia*, a statement of the questions involved. *See* Pa.R.A.P. 2111(a)(4). An appellant waives issues that are not included in the statement of questions involved in his brief on appeal. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa.Super. 2006). Instantly, Father failed to object to standing in either his statement of errors complained of on appeal or his statement of questions involved in his brief. Thus, for these additional reasons, the issue is waived. *Lord*, *supra* at 309; *Krebs*, *supra* at 79.

Next, we turn to the merits of Father's argument challenging the trial court's best-interest determination in light of the favorable statutory presumption and because the court allegedly considered facts that he claims were not supported by the record. Neither claim merits relief.

As between a parent and a third party, the Child Custody Law states, in part, "In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S. § 5327(b). It therefore follows,

> where the custody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced. In such instances, the parents have a prima facie right to custody, which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the biological parents' side.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1199 (Pa.Super. 2012) (*quoting* **Charles v. Stehlik**, 744 A.2d 1255 (Pa. 2000)).

We further explained,

> What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side. [**McDonel v. Sohn**], 762 A.2d 1101, 1107 (Pa.Super. 2000) (quoting [**Ellerbe v. Hooks**, 416 A.2d 512, 513–514 (Pa. 1980)]). In [**Ellerbe**, **supra**] at 514, our Supreme Court noted that "these principles do not preclude an award of custody to the non-parent. Rather they simply instruct the hearing judge that the non-parent bears the burden of production and the burden of

persuasion and that the non-parent's burden is heavy." Essentially, the Supreme Court determined, "where circumstances do not clearly indicate the appropriateness of awarding custody to a non-parent, we believe the less intrusive and hence the proper course is to award custody to the parent or parents." [**Ellerbe**, **supra**] at 514.

*Id*. at 1199.

Initially, we highlight that the trial court not only expressly identified the statutory presumption in favor of parents, but it found that the presumption was rebutted by clear and convincing evidence. The court explained,

> Essentially, as it should be clear from a review of the [c]ourt addressing the other facts, this child simply does not have a relationship with his father.
>
> Certainly now that the father is satisfied that he is the biological father of [K.N.B.] and wishes to pursue custody a relationship may be developed over a period of time and ultimately it may be appropriate for the child to have more time with his father and even reside primarily with his father.
>
> However, at this time, clearly based on the facts, we are satisfied that it is in the best interest of [K.N.B.] to reside primarily with the maternal grandmother and in reaching that conclusion **we find that the presumption that primary custody should be awarded to the father has been overcome by clear and convincing evidence**.
>
> While the father does want to be part of [K.N.B.]'s life we are [most] concerned that he is not cognizant of what would be in the best interest of this child.
>
> Simply to send [K.N.B.] away to live with [a] father that he does not really know or have a relationship with so many miles away with a stepmother who he is afraid of just makes no sense.
>
> The Order we will enter will be an effort to try to get a relationship established between the father and [K.N.B.] to try to get to the point where the father can have more contact with the child and as we have indicated even eventually have [K.N.B.] in

his primary custody. However, it is going to take a lot of hard work on the part of particularly the father since he has not really been in the child's life and, as we have indicated, distance is a serious impediment in this matter.

Trial Court Opinion, 7/1/19, at 1, 6 (emphasis added). As the forgoing explanation belies Father's assertion that the trial court ignored the statutory presumption, no relief is due.

Moreover, to the extent that the gravamen of Father's complaint is not that the court ignored the presumption, but rather, that it erred in applying the presumption to the facts of this case, this clam also fails.

While Father's statement of questions articulates two distinct arguments relating to the presumption in favor of a parent and the consideration of extrajudicial evidence, Father presents these contentions collectively in the argument section of his brief. Essentially, Father challenges the court's best-interest analysis pursuant to the 23 Pa.C.S. § 5328 in light of joint complaints.

The following principles inform our review of Father's argument. "[W]hen making a custody award, '[t]he court shall delineate the reasons for its decision on the record in open court or in a written opinion or order.'" **M.J.M., supra**, at 335. The factors to be considered by the court:

(a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

- 8 -

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by

another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

In the instant case, the custody court determined that factors (2), (2.1), and (8) were inapplicable, and that factors (1), (11), (12), (13), (14), and (15) did not favor either party. It found that factors (3), (4), (5), (7), (9), and (10) favored Grandmother, and that factor (6) militated in favor of Father. In its order and opinion, the court fully discussed its reasoning for each statutory factor. Trial Court Opinion, 7/1/19, at 1-6.

To the extent that Father entreats that this Court reweigh the evidence adduced during the hearing in order to reach conclusions in his favor, his argument must fail. A party cannot dictate the weight that the trial court attributed to the evidence or its consideration of any single factor. Indeed, as we explained in **M.J.M.**, **supra** at 339, "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." We simply will not revisit the trial court's factual findings which are based on the certified record in order to reassess the weight of the evidence. **J.R.M. v J.E.A.**, 647, 650 (Pa.Super. 2011) ("with regard to issues of credibility and weight of the evidence, we must defer to the presiding

trial judge who viewed and assessed the witnesses first-hand"). Thus, to the extent that the certified record sustains the trial court's findings of fact, we do not disturb them.

With regard to the first factor, which party would be more likely to facilitate a relationship with the other, the trial court observed,

> [w]e have no reason to believe that this factor favors either party. Both have expressed a willingness to have the other party continue to be in the life of the child as much as possible, but the difficulty with that is that there is a geographical distance between the residence of the father and the residence of the maternal grandmother.

Trial Court Opinion, 7/1/19, at 1.

Notwithstanding Father's assertion that Grandmother interfered with his ability to contact K.N.B., Grandmother testified that Father calls K.N.B. "sometimes, and that's about all." N.T., 6/18/19, at 115. Following Mother's death, Father called every couple of weeks but in the month prior to the hearing called twice a week. *Id*. at 115-16. The calls lasted approximately two or three minutes. *Id*. at 116. After the calls ended, Father would promise to call at certain times, or call tomorrow, but did not always follow through. *Id*. at 116. Grandmother explained that the calls take place on a landline, and she asks Father to leave a message so she will not miss his calls. *Id*. Every time she receives a message from Father, she has K.N.B. return the call unless K.N.B. is not there, and then she has K.N.B. call him back as soon as he can. *Id*. at 117-18. Grandmother testified that she believes Father should have a relationship with K.N.B. but should make more effort to see him first.

*Id*. at 120-21. She stated that if Father were to express more commitment to his son, she would be willing to help facilitate K.N.B.'s travel to Oklahoma. *Id*. at 121-22. As the certified record supports the trial court's consideration of this factor, we do not disturb it. *M.J.M.*, *supra*.

Father combines his arguments regarding the third factor, the parental duties performed by each party, and the fourth factor, the child's need for stability. *See* Father's brief at 12-13. With regard to the third factor, Father argues that the court over emphasized the evidence that Grandmother provided care and consistency for K.N.B. throughout his life. *Id*. at 12. Essentially, he argues that Grandmother has only cared for K.N.B. since 2016, when Mother moved to Pennsylvania, and that Grandmother was not involved with K.N.B.'s schooling until 2017-2018. *Id*. at 12-13. Additionally, Father argues that the only reason Grandmother performed most of the care of K.N.B. was in order to prevent Father from contacting his son *Id*. at 13.

Here, the trial court observed that

[t]his factor strongly favors the maternal grandmother.

. . . .

The father indicated that when [K.N.B.] was born [Father] held him for approximately twenty minutes to one hour in the hospital until he was told to leave by the mother and her boyfriend.

The father indicated he watched [K.N.B.] at the mother's house on a couple of occasions in 2009 and in fact did a DNA swab of the child's mouth which was supposed to be submitted by the mother to determine whether [Father] was the biological father of the child.

- 12 -

. . . .

Essentially, after the 2009 contact with [K.N.B.], the father did not have contact with [K.N.B.] until he learned that his mother was seeing [K.N.B.] in 2016. That led to the mother of [K.N.B.] permitting him to have a vacation with [K.N.B.] with the child in Florida. That vacation was also attended by the father's wife and their three children as well as the paternal grandmother.

. . . .

After the mother died in November of 2018 about four days later the father made contact with the maternal grandmother and since then has had some telephone contact and Skype contact on a couple of occasions with [K.N.B.].

Those have been of short duration because the father indicates [K.N.B.] is shy and does not wish to talk for long periods of time.

. . . .

In the meantime while the father had that limited contact with [K.N.B.] over the years the child resided from time to time with his mother in the home of the maternal grandmother with her providing some care and the primary care for [K.N.B.] since the mother died.

So essentially while the maternal grandmother has provided parental duties for [K.N.B.] in the past to some extent and particularly since the death of his mother on November 17, 2018 the father has provided no parental duties other than the contact he had with [K.N.B.] when [K.N.B.] was an infant and the time he spent on vacation with [K.N.B.] in Florida.

Trial Court Opinion, 7/1/19, at 1-6.

We see no error or abuse of discretion in the court's summary of the facts introduced at the trial *de novo*. N.T., 6/18/19, at 5-74, 76-83, 84-152. Of the two members of K.N.B.'s family currently available to care for him, Grandmother has cared for him longer. Nor did the court find that

Grandmother had cared for K.N.B. "throughout his life," but, rather, that she has provided some parental duties prior to Mother's death and primary parental duties following Mother's death. Additionally, the record supports the trial court's determination that Father's lack of relationship with K.N.B. was due to Father's own choices, and that he did not seriously attempt to develop a relationship with K.N.B. until after Mother's death. As noted above, Grandmother did not attempt to prevent Father from forming a relationship with K.N.B. As the record supports the court's determination that this factor favored Grandmother, it is unassailable. *M.J.M.*, *supra*.

With regard to the fourth factor, K.N.B.'s need for stability and consistency, Father baldly asserts that, since the death of Mother, K.N.B. has not had the consistency the trial court found that K.N.B. had with Grandmother. Father's brief at 12. As Father does not develop this argument, it is waived. *Thomas v. Thomas*, 194 A.3d 220, 229 (Pa.Super. 2018) (noting that failure to support each issue with analysis of pertinent legal authority results in waiver).

Moreover, the record reflects that Grandmother remained a constant source of stability despite traumatic loss and upheaval, including the deaths of his K.N.B.'s mother and maternal uncle. Throughout this period, Grandmother provided a stable home, the opportunity to obtain trauma counseling, and continuity for K.N.B. in school and at home. N.T., 87-89, 92-97, 103-107, 109-113.

Father also combines his arguments as to factors five, the availability of extended family, and six, the availability of sibling relationships. **See** Father's brief at 14. Father admits that K.N.B. has extended family in Pennsylvania, but contends that the court failed to consider that K.N.B.'s half-siblings, the children of Mother and J.G., were taken to Georgia. **Id**. at 14.

With regard to these factors, the trial court found,

> [K.N.B.] has several extended family members in the Conneautville to Meadville area and interacts with many of those individuals on a regular basis. In Oklahoma he would have his stepmother, three half siblings and his father, but no extended family.
>
> Next we consider [K.N.B.]'s sibling relationships and this factor would favor the father.
>
> As we have indicated [K.N.B.]'s two siblings from his mother's relationship with [J.G.] reside in Georgia and he does have contact with them thanks to the efforts of his maternal grandmother and at least one aunt, but in the home of the father he would have the three half siblings who were born to the relationship of the father and his wife, [S.V.]

Trial Court Opinion, 7/1/19, at 1-6. Father does not dispute the trial court's findings regarding factor five, and the record belies his characterization of the trial court's findings regarding factor six. Contrary to Father's assertion, the trial court did, in fact, consider that K.N.B.'s half siblings were taken to Georgia, and weighed this factor in Father's favor.

With regard to factor seven, the well-reasoned preference of the child, Father argues that the court did not interview K.N.B. and challenges the

court's findings that K.N.B. was afraid of Stepmother and that there was no relationship between Father and K.N.B. *See* Father's brief at 14.

Here, the trial court reasoned,

[t]he parties agreed that because [K.N.B.] has had so much trauma and probably would not have said anything that was not already discussed by the adult witnesses that he would not be interviewed by the [c]ourt with counsel present.

The parties did stipulate that [K.N.B.], if he testified, would indicate that he did not want to move to Oklahoma with his father and that he was afraid of [Stepmother].

That obviously would favor the maternal grandmother.

Trial Court Opinion, 7/1/19, at 1-6.

Father's complaints are meritless in light of the fact that he agreed that K.N.B. would not be interviewed, and stipulated to the facts that K.N.B. was frightened of Stepmother and did not want to move to Oklahoma. The court's findings are thus supported by the record.

With regard to factor eight, the attempts of one parent to turn the child against the other, Father argues that Grandmother tried to turn K.N.B. against him. Father's brief at 14. In support of his argument, Father challenges, as "out of character," the veracity of K.N.B.'s statement that he did not want to move because Father would not let him see his grandparents, and because he was in a good school. *Id*. at 14-16. Father argues that Grandmother was attempting to convince K.N.B. that Father intended to take K.N.B. away from her. *Id*. at 17.

- 16 -

Father's assertions are not supported by the record. Even in the portion of the record that Father quotes in support of his argument, the testimony does not establish that Grandmother attempted to sabotage K.N.B.'s relationship with Father. At most, it establishes that Father believed that K.N.B.'s statements were "out of character." However, since Father testified that he did not speak with K.N.B. often, and that K.N.B. was shy and reticent during their conversations, the court weighed Father's characterization of his son's statements appropriately. Accordingly, we find no error.

With regard to factor nine, which party is more likely to maintain a loving, stable, consistent and nurturing relationship adequate for the child's emotional needs, Father argues that he is in better condition to provide a consistently stable life for K.N.B. as a retired Army veteran with steady employment. Father's brief at 17. Father continues that, although he has multiple sclerosis ("MS"), his disease has not progressed to the point that it would affect his parenting, and he disputes the court's finding that Stepmother suffers from mental health issues. *Id*. at 17. Additionally, Father argues that the court failed to consider that Grandmother and her boyfriend will be elderly when K.N.B. becomes a teenager. *Id*. at 17. Father also faults Grandmother for the deaths of her children from drug overdoses, apparently implying that K.N.B. is in danger of following the same path. *Id*.

With regard to factor nine, the trial court noted,

> [w]e have no doubt that the father has good intentions even though his contact with [K.N.B.] for most of [K.N.B.]'s life has been minimal. It appears that he has a stable relationship in

Oklahoma and could in time provide a loving, stable, consistent and nurturing relationship with [K.N.B.] adequate for [K.N.B.]'s emotional needs.

However, as matters stand now for the various reasons we have discussed the maternal grandmother is more likely to be able to provide a better, particularly stable, nurturing relationship that is more adequate for [K.N.B.]'s emotional needs at this time.

Therefore, this factor favors the maternal grandmother.

Trial Court Opinion, 7/1/19, at 1-6.

As discussed in more detail, *supra*, K.N.B. is a child who has suffered numerous traumatic losses in a short period of time. Grandmother and her boyfriend have been providing primary parental responsibilities to K.N.B. since Mother's death. K.N.B. has consistency, stability, and a routine with them. On the contrary, K.N.B. is shy and hesitant around Father, with whom he has not had much contact, and is afraid of his stepmother. The trial court's discussion of this factor is unassailable.

With regard to factor ten, which party is more likely to attend to the daily physical, emotional, developmental, and special needs of the child, Father contends that through his military service, he has training that will allow him to aid K.N.B. through the trauma of losing his mother. Father's brief at 18. Here, the trial court reasoned,

[a]gain this factor favors the maternal grandmother simply because she has been there for [K.N.B.] and has been able to do that whereas the father, while we have indicated has good intentions and may well in the future be in a position to be more likely to do so, he has not really demonstrated that he can attend to those daily needs at this point whereas the maternal grandmother has done so.

Trial Court Opinion, 7/1/19, at 1-6.

While Father may have experience in the military as a resiliency trainer,[2] the court's conclusion is amply supported by the record because Grandmother has been in K.N.B.'s life and attending to his daily needs, while Father has not. Accordingly, we do not disturb it.

Finally, Father challenges the court's determination regarding factor fourteen, the history of drug and alcohol abuse of a party or member of a party's household, and fifteen, the mental and physical condition of a party or member of a party's household. *See* Father's brief at 18. He combines his argument as to these two sections, and avers that there are no mental health problems in his household, that Grandmother cannot raise K.N.B. due to her age and health, and that there is proof of prior drug abuse in Grandmother's family, as two of her children have suffered fatal drug overdoses. *Id*.

In making its best-interest determination, the trial court found that the factor favored neither party because there was no evidence presented of a history of drug or alcohol abuse as to either party or members of their current household.

There is no reason to disturb the court's determination that the factors were neutral. Significantly, with regard to Father's argument concerning drug

---

[2] Father described this position as "I help people cope with certain things[.] Being able to take 17 and 18-year-olds that have just joined the Army that come from – they all didn't come from great pasts, trouble pasts, and being able to teach them and mold them and have them turn out to be great adults, teach them right from wrong, even though they came from bad backgrounds as it is." N.T., 6/18/19, at 37.

- 19 -

abuse within Grandmother's family, there was no evidence introduced to show that either Grandmother or her boyfriend, the only members of the household in which K.N.B. lives, abused drugs.

In sum, it is clear from the trial court's thorough and thoughtful analysis of the best-interest factors that the court applied the statutory presumption in favor of parents and considered the evidence presented at the trial. Stated plainly, the court found by clear and convincing evidence that K.N.B.'s best interest will be served by awarding primary custody to Grandmother, the only source of stability that he has recently known, and by providing Father the opportunity to build a relationship with K.N.B. so that he may seek primary custody of K.N.B. in the future.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/29/2020