J-S66018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROSA IZELA DIAZ, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ALFIO FELICE PULIA, | : | |
| | : | |
| Appellant | : | No. 638 MDA 2014 |

Appeal from the Order Entered March 10, 2014,
In the Court of Common Pleas of York County,
Civil Division, at No. 2014-FC-00323-12.

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 30, 2014**

Alfio Felice Pulia ("Appellant") appeals from the final protection-from-abuse ("PFA") order issued to Rosa Izela Diaz ("Ms. Diaz").  We vacate in part and affirm in part.

The trial court summarized the history of this case as follows:

> A Petition for Protection From Abuse was filed by [Ms. Diaz] on February 27, 2014, alleging that Appellant was stalking or threatening her, and was making unwanted phone calls and/or sending unwanted text messages and emails to her.  A hearing was held before the [trial court] on March 10, 2014, at which time . . . Ms. Diaz, appeared pro se due to a conflict of interest with the attorney she had retained.  The trial court and Appellant's counsel both questioned Ms. Diaz.  The Appellant, Mr. Pulia, also testified and was questioned by both the trial court and his counsel.
>
> The parties stated that they were formerly engaged and shared a house in New Freedom, PA that was owned only by Ms. Diaz, which she had purchased from Appellant's ex-wife.

Appellant confirmed that the house was purchased with a mortgage, and that the mortgage was in Ms. Diaz' name only. The parties lived in the house with [Ms. Diaz's] two minor sons. Appellant's two adult daughters also lived in the house, although one daughter was usually away at college while the other attended nearby York College and frequently stayed with friends.

Ms. Diaz testified regarding an incident that occurred on February 14, 2014, when Appellant questioned her regarding a phone message from another man. She stated that she felt threatened by Appellant's behavior towards her at that time, and told him that he would have to leave the home. She further stated that Appellant refused to leave, and engaged in a pattern of harassment and stalking her since that time which placed her in fear of harm. In addition, Ms. Diaz testified with regard to Appellant's treatment of her sons[, J.M. and L.M.], one of whom has attention deficit and hyperactivity disorder ("ADHD"), although the children were not part of the protection from abuse request or the Final Order.

The Appellant testified with regard to the February 14, 2014 incident, as well as other issues, including his treatment of, and interactions with, [Ms. Diaz's] two sons. There was a significant amount of questioning with regard to the circumstances surrounding [Ms. Diaz's] purchase of the house, although it was ultimately established that [Ms. Diaz] was the sole owner and Appellant had no rental or lease agreement.

At the conclusion of the testimony, [the trial court] concluded that Appellant's behavior towards [Ms. Diaz], in particular his refusal to leave the house and his behavior towards [Ms. Diaz] while she was living there, constituted abuse as defined by 23 Pa.C.S.A. §6102(a). The Final Protection From Abuse Order was then issued, as described above.

Trial Court Opinion, 6/23/14, at 1–2. This appeal followed. Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant presents the following questions for our consideration:

I. Whether the trial [court] committed an error of law in excluding [Appellant's] adult children, who were residing at the parties' residence at 7-B Heritage Farm Drive, as the court lacks subject matter jurisdiction under the Protection from Abuse Act (PFA), 23 Pa.C.S. §6101 et seq., to exclude [Appellant's] children from the residence.

II. Whether the trial court lacked personal jurisdiction over [Appellant's] children as they were not named as defendants in the PFA action and were not served with the Petition for Protection from Abuse and therefore, could not exclude the children from the real property at 7-B Heritage Farm Drive.

III. Whether the trial court abused its discretion and committed an error of law in finding that [Appellant] committed "abuse" as defined under the PFA statute toward [Ms. Diaz], as [Ms. Diaz] failed to meet her burden of proof to prove "abuse" as to herself and her two children.

IV. Whether the trial court improperly admitted hearsay testimony as to the cause of [J.M.'s] injuries.

Appellant's Brief at 2.

"The PFA Act is meant to focus on prevention of abuse." *McCance v. McCance*, 908 A.2d 905, 911 (Pa. Super. 2006) (citing *Snyder v. Snyder*, 629 A.2d 977 (Pa. Super. 1993)). The intent of remedies provided by the PFA Act is to allow persons to reside peaceably and without injury within their own families or residences. *Id.* (citing *Miller v. Walker*, 665 A.2d 1252 (Pa. Super. 1995)). We review the propriety of a PFA order for an

abuse of discretion or an error of law. ***Ferko-Fox v. Fox***, 68 A.3d 917, 920 (Pa. Super. 2013) (citation omitted).

We consider Appellant's first two issues together as they concern the trial court's jurisdiction to evict Appellant's adult daughters. As a prefatory matter, we must examine Appellant's standing to challenge the trial court's exercise of jurisdiction over Appellant's adult daughters. We have addressed this matter as follows:

> In ***In re deYoung***, 903 A.2d 1164 (Pa. 2006), the Commonwealth Court *sua sponte* raised the issue of whether the objector had "standing to bring an objection to the Statement of Financial Interests attached to the Nomination Petition of the candidate." ***Id.*** at 1165. On appeal, our Supreme Court disagreed and stated the court "is prohibited from raising the issue of standing *sua sponte*." ***Id.*** at 1168.

***In re Estate of Brown***, 30 A.3d 1200, 1204 (Pa. Super. 2011). However, we further noted that:

> the issue of standing may be waived by a party "if not objected to at the earliest possible opportunity." ***Thompson v. Zoning Hearing Bd. of Horsham Twp.***, 963 A.2d 622, 625 n. 6 (Pa.Commw.2009).[FN2] In ***Thompson***, the Zoning Hearing Board of Horsham Township ("Board") "held a hearing on the landowner's variance requests, at which the Board granted Edwin R. Thompson party status without any objection by [the landowner." ***Id.*** at 624. "Thompson appealed the Board's decision to the trial court, and the landowner filed a motion to quash the appeal, arguing that Thompson lacked standing." ***Id.*** "The trial court denied the landowner's motion to quash, reasoning that the landowner waived any challenge to Thompson's standing by failing to object" at the initial hearing. ***Id.*** The Commonwealth Court affirmed the trial court's denial. ***Id.*** at 625.

-4-

> FN2. Although decisions by the Commonwealth Court are not binding on this Court, they may be persuasive. ***See, e.g., Citizens' Ambulance Serv. Inc. v. Gateway Health Plan***, 806 A.2d 443, 447 n. 3 (Pa.Super.2002).

***Estate of Brown***, 30 A.3d at 1204–1205.

Herein, Ms. Diaz has not objected to Appellant's standing to raise arguments on behalf of his two adult daughters. We will thus address Appellant's challenge to the eviction of his daughters in the PFA order.

According to Appellant, the trial court lacked subject matter jurisdiction over his adult daughters because they "were not 'family or household members' who would be subject to remedies provided by the PFA statute." Appellant's Brief at 6. Alternatively, Appellant argues, the trial court lacked personal jurisdiction over the daughters because "they were neither named as parties, nor served with original process." ***Id.*** at 9.

The trial court explained its decision to evict Appellant's daughters as follows:

> [E]xclusion of Appellant's children was appropriate under the circumstances, since neither they nor Appellant had any ownership rights to the residence, nor were they lessees or tenants. There was also a concern that there was a great risk that Appellant would violate the Order by contacting or monitoring [Ms. Diaz] through Appellant's children as third parties.

Trial Court Opinion, 6/23/14, at 3.

Notably, Ms. Diaz does not dispute Appellant's assertions that the trial court lacked personal jurisdiction over his daughters:

> Ms. Diaz agrees with counsel for [Appellant] that a PFA order is not the appropriate mechanism to resolve the occupancy rights of the adult children, who were not parties to the underlying PFA action. Ms. Diaz further notes that the adult children have vacated the residence and have demonstrated no intent to reenter absent reentry by [Appellant].

Ms. Diaz's Brief at 2–3. We agree with Ms. Diaz that a PFA order was not the correct procedure for resolving the occupancy rights of Appellant's daughters and, thus, conclude that the portion of the trial court's order evicting Appellant's daughters was a nullity. **Accord Estate of Brown**, 30 A.3d at 1205 ("A court must have personal jurisdiction over a party to enter a judgment against it. Action taken by a court without jurisdiction is a nullity."). Accordingly, we vacate that portion of the PFA order.

Next, we turn to Appellant's third issue, which challenges the sufficiency of the evidence of abuse to sustain the issuance of the PFA order.

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence.

**Thompson v. Thompson**, 963 A.2d 474, 477 (Pa. Super. 2008) (quoting **Fonner v. Fonner**, 731 A.2d 160, 161 (Pa. Super. 1999) (citations omitted)). This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it. **Id.** Furthermore, "the preponderance of evidence standard is defined as the greater weight of the

evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." **Id.** (quoting **Raker v. Raker**, 847 A.2d 720, 723 (Pa. Super. 2004)).

The PFA Act defines abuse as follows:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a)(1–5). Mere annoyance or unwanted communication cannot form the basis of a finding of abuse. **D.H. v. B.O.**, 734 A.2d 409

(Pa. Super. 1999). However, actual physical harm is not a prerequisite for the entry of a PFA order; the victim need only be in reasonable fear of bodily injury. **Fonner**, 731 A.2d at 163; 23 Pa.C.S. § 6102(a)(5).

Here, the trial court determined succinctly that:

Appellant's actions constituted abuse as defined by 23 Pa.C.S.A. §6102(a), in particular paragraph[] (5) of the "Abuse" definition ("Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.")[.]

Trial Court Opinion, 6/23/14, at 4.

Upon review, we discern support in the record for the trial court's disposition. Mother testified that Appellant refused to leave her residence when she ended their relationship; that Appellant "started harassing [her] and stalking [her];" that she was "very afraid of him;" that, when she came out of her room, Appellant "was after [her] and . . . follow[ed her] everywhere and ask[ed her] questions;" that Appellant screamed he "will not leave the house because that was his house;" that Appellant sent numerous, obsessive emails and text messages, even after she asked him to stop; that Appellant refused to accept that their relationship was over and that he was no longer welcomed in Ms. Diaz's home; that she could not be in the house because she was "very concerned of his obsession with [her] to do something out of anger with [her] children;" that she had "been living for the last week in a hotel with her kids;" that Appellant refused to leave the

-8-

house although she told him to on numerous occasions; that Appellant scares her with all the things he invents, like affairs between Ms. Diaz and other people.  N.T., 3/10/14, at 8–16.

Based on this record and our deferential standard of review regarding credibility determinations, we conclude that Appellant's verbal chiding, refusal to leave, intimidating demeanor, accusations, and electronic communications coalesce to constitute abusive behavior prohibited by 23 Pa.C.S. § 6102(a)(5).  Thus, we further conclude that the trial court's decision was in accordance with the intent of the PFA Act and not an abuse of its discretion.

Lastly, we address Appellant's challenge to the admission of hearsay testimony regarding injuries to Ms. Diaz's minor son, J.M.

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, **for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party**.
>
> "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused."

*Stumpf v. Nye*, 950 A.2d 1032, 1035 (Pa. Super. 2008) (quoting *Geise v. Nationwide Life and Annuity Co. of America*, 939 A.2d 409, 417 (Pa.

Super. 2007) (quotations omitted)) (emphasis supplied). Moreover, past acts of violence are relevant to an understanding as to the reasonableness of a PFA petitioner's fear. ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1264 (Pa. Super. 2008).

Appellant argues that the trial court erred in allowing Ms. Diaz to testify as to what other people said about red marks appearing on J.M.'s stomach. Appellant's Brief at 12–13. Upon review of the transcript, however, we conclude that any perceived evidentiary error was harmless.

Ms. Diaz expressed concern for her safety based, in part, on hearsay statements that Appellant had caused injury to her minor son, J.M. Such evidence was relevant to an understanding as to the reasonableness of Ms. Diaz's fear of Appellant. ***Buchhalter***, 959 A.2d at 1264. Also, Appellant testified at length regarding his relationship with Ms. Diaz's sons and, specifically responded to Ms. Diaz's allegations about the marks on J.M.'s stomach. N.T., 3/10/14, at 34–42. Appellant explained that the marks may have been caused by J.M. using the shovel against his stomach to push heavy snow, a technique J.M. had seen Appellant use. ***Id.*** at 38–39. Moreover, the trial court did "not believe that the treatment of [Ms. Diaz's] children would have altered [its] decision to grant [Ms. Diaz] the PFA Order . . . . [U]ltimately, it was [Ms. Diaz's] fear of harm based upon Appellant's behavior that resulted in granting the Order." Trial Court Opinion, 6/23/14,

at 3–4. In light of the foregoing, we conclude trial court's ruling was not harmful or prejudicial to Appellant and, therefore, did not constitute reversible error. *Stumpf*, 950 A.2d at 1035.

We discern no merit to Appellant's evidentiary challenges. Thus, we affirm the final protection-from-abuse order as it applies to Appellant.

Order vacated in part and affirmed in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2014