**ATLANTIC LB, INC., Appellant,**

v.

**Zdravko Braco VRBICEK and Joyce S. Vrbicek, H/W, Appellees.**

Superior Court of Pennsylvania.

Argued June 20, 2006.

Filed Aug. 4, 2006.

---

554

H. Jeffrey Brahin, Doylestown, for appellant.

James A. Rocco, III, Philadelphia, for appellees.

BEFORE: KLEIN, GANTMAN, JJ., and McEWEN, P.J.E.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Atlantic LB, Inc., appeals from the judgment[1] of the Philadelphia County Court of Common Pleas, entered in favor of Appellees, Zdravko Braco Vrbicek and Joyce S. Vrbicek, h/w, in this action for possession of leased premises. Appellant asks whether the trial court erred when it declared the parties' lease agreement in full force and effect, under the doctrine of substantial perform-

---

1. In its notice of appeal, Appellant purports to appeal from the trial court's September 7, 2005 order, which denied post-trial motions. Such an order is interlocutory and generally not appealable. *Brown v. Philadelphia College of Osteopathic Medicine*, 760 A.2d 863, 865 (Pa.Super.2000), *appeal denied*, 566 Pa. 632, 781 A.2d 137 (2001). Rather, the subsequent judgment is appealable. *Id.* A final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction. *Drum v. Shaull Equipment and Supply Co.*, 787 A.2d 1050 (Pa.Super.2001), *appeal denied*, 569 Pa. 693, 803 A.2d 735 (2002). In the present action, Appellant filed its notice of appeal on September 19, 2005. However, judgment was not entered on the verdict until November 9, 2005. Thus, Appellant's notice of appeal relates forward to November 9, 2005, the date judgment was entered and copies of the judgment were distributed to all the appropriate parties. *See* Pa.R.A.P. 905(a) (stating notice of appeal filed after court's determination but before entry of appealable order shall be treated as filed after such entry and on date of entry).

ance. We hold the court properly utilized the doctrine of substantial performance in this case to avoid an unacceptable forfeiture. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. On January 21, 2002, the parties entered into a lease purchase agreement whereby Appellant leased premises to Appellees for use as a restaurant. The lease required a monthly rental to be paid on the first day of each month. The lease also stated any rental payment that is more than ten days overdue will be assessed a charge of five percent of the overdue amount. Further, Appellees had to pay all real estate and land use and occupancy taxes to the city at least twenty days before they came due. The lease contained an integration clause and stated "[time] is of the essence in regard to the performance of the duties and obligations of the parties to this Agreement." (Lease Purchase Agreement, Article 3: Miscellaneous, Section 3.9; R.R. at 217a). Importantly, the agreement provided:

Article 1: Lease

\* \* \*

1.12 *Default.* The occurrence of any one or more of the following events shall be considered an "Event of Default" hereunder:

(a) The failure of Buyer [Appellees] to pay an installment or rent or additional rent or any other sum payable by Buyer hereunder within ten (10) days after Seller's [Appellant] written notice of nonpayment thereof; provided, however, that if Seller shall have given Buyer any two (2) notices of nonpayment in any calendar year it shall thereafter, for the remainder of such calendar year, be an Event of Default if Buyer shall fail to pay an installment of rent or additional rent or any

other sum payable hereunder when due, without notice from Seller.

(b) The failure to perform or the violation or breach by Buyer of any of the material terms, covenants or conditions hereof, which failure, violation or breach shall continue unremedied by Buyer for a period of ten (10) days after written notice thereof is given to Buyer by Seller.

(c) The insolvency of Buyer, as evidenced by an assignment by Buyer for the benefit of creditors, a Petition in Bankruptcy being filed by Buyer. . . .

(d) Anything else, which is identified as a default or event of default under this Agreement.

A Default by either [Appellee] shall constitute a default by both [Appellees].

1.13 *Effect of an Event of Default.* Upon the occurrence of any Event of Default, Seller shall be entitled to any remedy available to it at law or in equity, including but not limited to an action for ejectment and damages. Upon the occurrence of any Event of Default, Buyer's right to purchase the premises under this Agreement shall immediately terminate and become void.

The exercise of any one remedy by Seller shall not be deemed a waiver of Seller to exercise the same remedy again or any other remedy that might be available to Seller.

(*Id.,* Article 1: Lease, Section 1.12–1.13; R.R. at 211a–212a). The parties agreed that their contract was governed by Pennsylvania law. (*Id.,* Article 3: Miscellaneous, Section 3.8; R.R. at 217a). Section 3.13 states: "The parties hereto agree and acknowledge that contemporaneously with the execution of this Lease Purchase Agreement, the Buyer. . .will execute an

Agreement of Sale and that this Agreement of Sale is contingent upon the consummation of both agreements and that neither agreement may stand or be valid without the other." (*Id.*, Article 3: Miscellaneous, Section 3.13; R.R. at 218a).

¶ 3 In March 2003, Appellees started making late payments and fell behind in both rental and tax payments. During a meeting between Appellant and Appellees, the parties reached a temporary agreement allowing Appellees to pay rent semi-monthly and pay past-due taxes over six months or until the taxes were paid off. The parties agreed this was only a temporary arrangement, to last until Appellees' business improved. Appellant refused to put the agreement into writing (presumably because that would work to modify the lease).

¶ 4 Appellees continued to make late payments and Appellant continued to press Appellees for rental payments. Even under the interim arrangement, by August 2003, Appellees were behind in their rent; and Appellant experienced difficulty locating Appellees, because Appellees temporarily closed the restaurant and did not answer the telephone. On September 9, 2003, Appellant sent its first written notice of nonpayment to Appellees by regular mail, indicating Appellees owed back rent. The notice gave Appellees ten (10) days to cure the arrears. The notice, however, was addressed to the wrong zip code, and Appellees did not receive it until twenty days later, after which they paid all arrearages, except some minor disputed fees. Meanwhile, Appellant learned that Appellees had been approached by a third-party, who was interested in buying the premises from Appellees.

¶ 5 By November 24, 2003, Appellant claimed Appellees still owed $10,225.70, including rent for October and November. Appellant sent a second written notice of nonpayment to Appellees, after which Appellees again paid all but some disputed amounts. Additionally, Appellant filed a Judgment by Confession in ejectment against Appellees.

¶ 6 On December 9, 2003, Appellees filed a petition to open the confessed judgment, which the court granted on May 27, 2004. On July 21, 2004, Appellees answered the complaint in confession of judgment.

¶ 7 Meanwhile, on July 8, 2004, Appellees attempted to exercise the option to purchase provided in the lease. On July 16, 2004, counsel for Appellant sent a letter refusing to allow Appellees to exercise the option due to the substantial breaches which were still contested and under the court's review.

¶ 8 On February 14, 2005, a non-jury trial took place. On May 31, 2005, the court ruled in favor of Appellees, finding that the lease was still in full force and effect. As such, the option to purchase was also still in effect, Appellees having cured all arrears.

¶ 9 On September 7, 2005, the trial court denied Appellant's post-trial motions. The court entered judgment in favor of Appellees and against Appellant. Appellant filed a timely notice of appeal. Because the trial court filed no opinion, Appellant filed with this Court a motion to remand to the trial court for an opinion. This Court denied that motion on March 3, 2006.

¶ 10 Appellant raises four issues on appeal:

WHETHER THE COURT ERRED WHEN IT FOUND THAT APPELLEES DID NOT SUBSTANTIALLY BREACH THE LEASE OR COMMIT NUMEROUS OR SUBSTANTIAL EVENTS OF DEFAULT UNDER THE LEASE?

WHETHER THE COURT ERRED WHEN IT FOUND THAT NOT PERMITTING APPELLEES TO CURE DEFAULTS AFTER NOTICE EXPIRED WOULD FORFEIT TENANT'S RIGHTS?

WHETHER THE COURT ERRED WHEN IT FOUND THAT APPELLEES WERE ABLE TO CURE ALL DEFAULTS BY PAYING ARREARS?

WHETHER THE COURT ERRED WHEN IT FAILED TO FIND THAT THE OPTION TO PURCHASE WAS VOID UPON SUBSTANTIAL DEFAULT OF THE LEASE?

(Appellant's Brief at 4).

■■■ ¶ 11 Appellate review in this case implicates the following general principles: Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, as the issue...concerns a question of law, our scope of review is plenary.

*Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547, 549–50 (Pa.Super.2004), *appeal denied*, 583 Pa. 667, 876 A.2d 392 (2005) (internal citations omitted). The trial court's conclusions of law on appeal originating from a non-jury trial "are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts" of the case. *Triffin v. Dillabough*, 552 Pa. 550, 555, 716

A.2d 605, 608 (1998) (emphasis in original); *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.*, 777 A.2d 1090 (Pa.Super.2001).

■■■ ¶ 12 "When reviewing the sufficiency of the evidence...this Court must determine whether the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the verdict winner, was sufficient to enable the factfinder to find against the losing party." *Zeffiro v. Gillen*, 788 A.2d 1009, 1013 (Pa.Super.2001) (internal citation omitted). A challenge to the sufficiency of the evidence in a civil case is reviewed on appeal as a claim that the trial court erred in denying a motion for judgment notwithstanding the verdict ("JNOV"). *Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 304 (Pa.Super.1999).

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for

JNOV. A JNOV should be entered only in a clear case.

*Id.* at 304–05 (internal citations omitted).

 ¶ 13 In its first three issues, Appellant argues Appellees' chronic non-payment and late payment of rent and other money owed constituted substantial breaches of the lease. Appellees paid rent late for April through November 2003. They also breached the generous accommodation Appellant provided to them in the meeting of March 2003, which allowed Appellees to stagger their rental and tax payments. Further, Appellant maintains Appellees failed to cure the unpaid rent until two months after the Complaint in Confession of Judgment was filed, even though the cure period was ten (10) days. These events constituted substantial breaches, especially where the lease provided "time is of the essence."

¶ 14 Appellant concedes that Pennsylvania law disfavors forfeiture of a tenant's rights for non-payment of sums due, when the contract has been fully carried out, or its literal fulfillment has been prevented by oversight or uncontrollable circumstances. Appellant contends Appellees' failure to fulfill their obligations under the parties' contract was not due to any oversight or uncontrollable circumstances. Appellant argues that the law disfavoring forfeiture was designed to protect residential tenants from being evicted if they were unable to pay their rent. Actions in ejectment in Common Pleas court, however, frequently involve commercial tenants, and payment of arrears after suit is filed does not necessarily "cure" a prior failure to pay. A commercial tenant, who has repeatedly breached its contract, should not be allowed to remain in the leasehold just because the tenant can suddenly and miraculously pay all of the arrears, particularly where the tenant forced the landlord to undergo the expenses of filing an action to evict. Appellant maintains Appellees simply cannot "cure" their multiple and substantial breaches of the lease, including chronic late payments and substantial non-payments of rent and additional rent, after all notice and cure periods under the lease have expired and after the confession of judgment was filed against Appellees.

¶ 15 Appellant further claims the temporary oral agreement between the parties, in 2003, did not act to modify Appellees' obligations under the lease. Even if it did, Appellees continued to make late payments and violate the "time is of the essence" provision of the lease. Appellant concludes the court erred when it refused to evict Appellees. We disagree.

 ¶ 16 Pennsylvania law permits forfeiture of a tenant's rights for non-payment of rent. *Barraclough v. Atlantic Refining Co.,* 230 Pa.Super. 276, 326 A.2d 477 (1974). However, the court should not enforce forfeiture "when the contract has been carried out or its literal fulfillment has been prevented by oversight or uncontrollable circumstances." *Id.* at 479. Forfeiture is strongly disfavored and strictly construed in both law and equity. *Liazis v. Kosta, Inc.,* 421 Pa.Super. 502, 618 A.2d 450, 455 (1992), *appeal denied* 536 Pa. 630, 637 A.2d 290 (1993).

 ¶ 17 According to this Court in *First Mortg. Co. of Pennsylvania v. Carter,* 306 Pa.Super. 498, 452 A.2d 835, 837 (1982), the doctrine of substantial performance has been created as an instrument of justice intended to avoid forfeiture because of technical, inadvertent or unimportant omissions. *Id.* The doctrine is "intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars.... *Schlein v. Gross,* 186 Pa.Super. 618, 142 A.2d 329, 333 (1958).

¶ 18 In the instant case, no one contests that Appellees repeatedly made late rental and tax payments under the lease in 2003. Nevertheless, according to the express language of the lease in this case, an **event of default** for purposes of forfeiture occurred only if Appellees failed to pay rent or other additional sum due **within ten days of written notice** from Appellant. (*See* Lease Purchase Agreement, Article 1: Lease, Section 1.12(a), *supra* (emphasis added).) Likewise, the lease also stated the failure of Appellees to perform or the violation or breach of any of the material terms, covenants or conditions of the lease would constitute an event of default if such failure, violation or breach continued "**for a period of ten (10) days after written notice thereof is given.**" (*Id.* at Section 1.12(b) (emphasis added)). As Section 1.12 makes clear, Appellees' nonpayment alone was insufficient under this lease to constitute an automatic event of default. The parties' agreement allowed Appellees two occasions of a ten (10)-day notice of nonpayment within one calendar year. Thereafter, for the remainder of that calendar year, an automatic event of default occurred if Appellees failed to pay an installment of rent or additional rent or any other sum payable under the lease when due, without notice from Appellant. (*Id.* at Section 1.12(a)).

¶ 19 In 2003, Appellant issued Appellees two notices of nonpayment. Appellees substantially cured their arrearages within ten days of receipt of each notice, except for small disputed sums. Therefore, Appellees were not in actual "default" as defined in the lease, although they came dangerously close to default. (*See id.*).

¶ 20 When the case came before the court in 2005, Appellees had substantially complied with all of their obligations under the lease. Therefore, the court refused to evict them from the property. The doc-trine of substantial performance can apply in this case, because of the language of the agreement as written. Nevertheless, this decision is not intended to be used indiscriminately as authority in all commercial leases for nonpayment of sums due. To the contrary, we emphasize the importance of careful attention to how these agreements are drafted and to the terms of the agreements as drafted. Thus, we conclude the evidence was sufficient to sustain the court's decision to uphold Appellees' rights under the terms of this lease. *See Buckley, supra.* Accordingly, Appellant's first three issues merit no relief.

¶ 21 In its fourth issue, Appellant complains Appellees cannot now exercise the option to purchase included in the lease, because they breached the terms and conditions of the lease on numerous occasions. Section 1.13 states that, upon the occurrence of any Event of Default, Appellees' right to purchase the premises under the agreement shall immediately terminate and become void. Appellant concludes the court erred when it confirmed the lease in full and refused to strike the option to purchase. We disagree.

¶ 22 If a party fails to fulfill a condition precedent to the performance of the contract, or if there are repeated defaults that are not cured, the other party is excused from performance. According to *Gateway Trading Co. v. Children's Hospital of Pittsburgh,* 438 Pa. 329, 265 A.2d 115 (1970), if a lease contains a provision granting a tenant an option to purchase if the tenant is not in default of the lease—and the tenant is in default—the tenant is not entitled to exercise the option. *Id.* Pennsylvania law holds that an option to purchase in a lease is not an essential covenant of the lease, nor is it a term or condition of the demise. This is true whether the consideration for the option

was independent from the consideration for the lease or was the same as the consideration for the lease. *Pettit v. Tourison,* 283 Pa. 529, 129 A. 587 (1925). *See, e.g., Owens Illinois, Inc. v. Lake Shore Land Co., Inc.,* 457 F.Supp. 896, 904 (W.D.Pa.1978), *affirmed,* 610 F.2d 1185 (3rd Cir.(Pa.) 1979), where the option was independent from the rental agreement and therefore the rental payment was not a condition precedent to the option (stating: "where an option in a lease is treated as an entirely separate agreement and without express language in the contract that default in the lease shall prevent securing of specific performance of the option, such default will be no bar"; therefore, plaintiff's default in performance of one covenant in lease did not terminate option to purchase, particularly where lease itself was not terminated because of default).

¶ 23 Instantly, this issue is also controlled by the express language of the parties' contract, which provided "neither agreement may stand or be valid without the other." (*See* Lease Purchase Agreement, Article 3: Miscellaneous, Section 3.13; R.R. at 218a.) Because the lease continued in full force and effect, Appellees' option to purchase remained viable as well. Thus, Appellant's final issue merits no relief.

¶ 24 Based upon the foregoing, we hold the court properly utilized the doctrine of substantial performance in this case to avoid an unacceptable forfeiture. Accordingly, we affirm.

¶ 25 Judgment affirmed.