J-A25025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| 1004 SOUTH 25TH STREET TRUST SUSAN BLOOMGARDEN, TRUSTEE AND GEORGE KUNEY | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| RICHARD BENNETT, INDIVIDUALLY & D/B/A BENNETTS PLUMBING AND HEATING AND WANDA MILLER | : : : : : : | No. 1468 EDA 2017 |
| APPEAL OF: GEORGE KUNEY | : | |

Appeal from the Judgment Entered June 13, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): December Term, 2014, No. 2373

| | | |
|---|---|---|
| 1004 SOUTH 25TH STREET TRUST SUSAN BLOOMGARDEN, TRUSTEE AND GEORGE KUNEY | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| RICHARD BENNETT, INDIVIDUALLY & D/B/A BENNETTS PLUMBING AND HEATING AND WANDA MILLER | : : : : : : | No. 1493 EDA 2017 |
| APPEAL OF: 1004 SOUTH 25TH STREET TRUST | : : | |

Appeal from the Order Entered April 5, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): December Term, 2014 No. 2373

BEFORE: PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY PANELLA, J.:                    **FILED APRIL 30, 2019**

In these consolidated appeals, George Kuney, *pro se*, and 1004 South 25th Street Trust ("the Trust") appeal from the judgment entered after the trial court found that Richard Bennett had not caused an oil leak that damaged property owned by the Trust. The Trust argues the trial court erred in refusing to reopen the record to consider photographs of the oil leak that were not available at trial. Kuney raises eight separate issues, which can be grouped into four categories: (1) the trial court erred in striking the Trust's claims for punitive damages; (2) the trial court erred in finding that Kuney did not have any individual standing to participate in this matter; (3) the trial court erred or abused its discretion in finding that Bennett did not cause the oil leak; and (4) the trial court erred in not reopening the record to admit the newly discovered photographs. We affirm.

The facts of this case are largely undisputed. As aptly noted by the trial court, the disputed issues of fact were whether Bennett had caused the leak and the amount of damages suffered by the various parties. **See** Trial Court Opinion, 12/26/17, at 5. The parties do not dispute that Wanda Miller hired Bennett and his company, Bennett's Plumbing and Heating,[1] to fix plumbing issues in the basement of 1006 South 25th Street. Miller owned the residence, although the parties did dispute whether it was her primary residence.

---

[1] There is no indication in the record that Bennett's Plumbing and Heating is a separate, limited liability entity. For ease of reading, we therefore will refer solely to Bennett as the interested party in this litigation.

On December 19, 2012, approximately one month after Bennett had last worked on 1006 South 25th Street, he returned to address continuing plumbing issues in the basement. The next day, Wanda Miller testified that she discovered an oil leak in the basement of her property. It was later determined that an oil fuel line in the basement had been severed, causing the oil spill.

The spill spread under the shared basement wall with 1004 South 25th Street, which the Trust owned. Tenants at 1004 South 25th Street complained of oil fumes to Kuney, who inspected the property about a month after the spill. The exact nature of Kuney's relationship to the Trust is a subject of legal dispute between the parties.

Kuney instructed the tenants to use cat litter on the basement floor to absorb the spill and further directed them to run fans to ventilate the basement. The Trust lowered the tenants' rent by $400 per month in order to compensate them for higher utility bills resulting from the fans. Miller subsequently filed suit against Bennett. Shortly thereafter, the Trust filed a complaint against Miller, Bennett, and another contractor, Active Plumbing and Drain Cleaning ("Active").

These two lawsuits were consolidated. In relevant part, the Trust's amended complaint asserted that Bennett had negligently severed the oil fuel line, causing the spill.

Active and Miller reached settlement agreements with the Trust and are not a subject of this appeal. The Trust's claims against Bennett proceeded to a bench trial, with Miller participating solely as a fact witness.

During her testimony, Miller testified to the existence of photographic negatives she had taken of the spill in January 2013. These photographs had not been produced in discovery. Instead, the parties had all relied on photographs taken by Kuney more than four months after the spill.

The trial court ordered Miller to have the negatives developed and to share them with Kuney, the Trust, and Bennett. However, the photographs were not provided to the parties until after the conclusion of the trial.

The trial court found that Bennett was a more credible witness than Miller and entered a verdict finding that Bennett did not cause the spill. Counsel for Kuney and the Trust then withdrew his appearance on behalf of Kuney, but continued to represent the Trust.

Kuney subsequently filed a *pro se* motion for post-trial relief, which the Trust joined.[2] Among a multitude of requests to reconsider the evidence presented, the motion requested the court reopen the record to consider Miller's photographs of the spill. The motion requested the court order Bennett to attend mediation or, in the alternative, to enter punitive sanctions against Bennett.

---

[2] Kuney and the Trust filed separate notices of appeal on the same date as the motion for post-trial relief. This Court quashed the appeals as premature.

At the hearing on the post-trial motion, the court reviewed Miller's photographs. It also directed Kuney and the Trust to submit briefs detailing the nature of Kuney's relationship to the Trust. The court sought to understand why both Kuney and the Trust were proceeding as separate entities post-trial.

After receiving these briefs, the court denied the Trust's motion to re-open the record. It further dismissed Kuney's motion, finding he had no standing in his individual capacity.

Kuney and the Trust separately filed premature appeals that were perfected when judgment was entered on June 13, 2017. We consolidated the appeals.

The trial court ordered Kuney and the Trust to file and serve statements of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Kuney timely filed and served his 1925(b) statement on the trial court. While the Trust timely filed its 1925(b) statement, it failed to timely serve the trial court with a copy.

Before we can reach the substantive issues raised by Kuney and the Trust, we must address the Trust's failure to serve the trial court with its 1925(b) statement. Rule 1925(b) allows a trial court to order an appellant to provide a concise list of the issue claims he wishes to raise on appeal. The court's order must direct the appellant to file the statement and serve it upon the parties and the court within a definite time period no shorter than 21 days. ***See id***.

If the court files such an order, the appellant must file the statement and serve the parties and the court within the appropriate period. *See* Rule 1925(b)(1). A Rule 1925(b) Statement is necessary for appropriate appellate review. "This Rule is a crucial component of the appellate process. It is intended to aid trial judges in identifying and focusing upon those issues that the parties plan to raise on appeal." 16A Standard Pennsylvania Practice 2d § 88:24. Our Supreme Court has stated:

> Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court *sua sponte*[.]

***Commonwealth v. Hill***, 16 A.3d 484, 494 (Pa. 2011).

> An *en banc* panel of this Court observed that:
>
> Our [Pennsylvania] Supreme Court intended the holding in [***Commonwealth v.***] ***Lord*** to operate as a bright-line rule, such that failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in *automatic waiver* of the issues raised. Given the automatic nature of this type of waiver, we are required to address the issue once it comes to our attention. Indeed, *our Supreme Court does not countenance anything less than stringent application of waiver pursuant to Rule 1925(b)*: [A] bright-line rule eliminates the potential for inconsistent results that existed prior to ***Lord***, when ... appellate courts had discretion to address or to waive issues raised in non-compliant Pa.R.A.P. 1925(b) statements. Succinctly put, *it is no longer within this Court's discretion to ignore the internal deficiencies of Rule 1925(b) statements*.

*Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (internal quotation marks and citations omitted; emphasis added).

In determining whether an appellant has waived issues on appeal based on non-compliance with Rule 1925, it is the trial court's order that triggers appellant's obligation under the Rule. *See In re Estate of Boyle*, 77 A.3d 674, 676 (Pa. Super. 2013). Accordingly, we look to the language of the order to determine whether the trial court complied with Rule 1925. *See id*.; *Berg v. Nationwide Mutual Insurance Company, Inc.*, 6 A.3d 1002, 1007–08 (Pa. 2010)(plurality).

Here, we have carefully reviewed the court's Rule 1925(b) order. Specifically, in relevant part, the trial court's order specified that the statement had to be filed and served on the court no later than May 30, 2017.[3] Yet, the trial court asserts that it was not served with a copy of the Trust's statement. *See* Trial Court Opinion, 12/26/17, at 11.

Bennett, in his brief, argues that the Trust's claims are waived due to the failure to serve the trial court. The Trust has not responded to the court's assertion. It does not discuss the issue of its Rule 1925 statement in its brief.

_____

[3] The docket indicates Rule 236 notice of the order was provided on May 8, 2017. Twenty-one days would have been Monday, May 29, 2017. However, that Monday was a court holiday, and therefore the Trust's statement was timely filed on May 30, 2017. *See* Pa.C.S.A. § 1908.

- 7 -

Nor has it filed any other document with this Court addressing the court's assertion that it was not served.

However, the Trust's Rule 1925(b) statement contains a certificate of service. The trial judge is listed first on the certificate of service. We are therefore presented with a record that reveals a disputed issue of fact.

Rule 1925 includes a process where a case may be remanded by an appellate court for the filing of a Rule 1925 statement:

> **(c) Remand.**
> (1) An appellate court may remand in either a civil or criminal case for a determination as to whether a Statement had been filed and/or served or timely filed and/or served.
> (2) Upon application of the appellant and for good cause shown, an appellate court may remand in a civil case for the filing nunc pro tunc of a Statement or for amendment or supplementation of a timely filed and served Statement and for a concurrent supplemental opinion.

Pa.R.A.P. 1925(c). The current circumstances would normally require a remand under Rule 1925(c). Nevertheless, we conclude a remand is unnecessary, as even if the Trust's sole issue on appeal is properly before us, it merits no relief.

The Trust contends the court erred in failing to re-open the record to consider the after-discovered photographs taken by Miller. Normally, after-discovered evidence would constitute grounds to request a new trial. **_See Claudio v. Dean Machine Co._**, 831 A.2d 140, 146 (Pa. 2003). Since this was a bench trial, the Trust merely asked the court to reopen the record to consider the new evidence. And the court did just that.

- 8 -

At the hearing on the post-trial motions, the court reviewed the after-discovered photographs taken by Miller. *See* Trial Court Opinion, 12/26/17, at 8. The Trust argued that the photographs demonstrated that Bennett had severed the fuel line. The court disagreed.

> This [c]ourt found these photographs would not have changed the outcome. The essence of the Trust's argument is the newly acquired photographs provided visual support that Appellees actually cut the pipe. Specifically, the Trust alleged the photographs showed an additional pipe with a fresh cut not depicted in the photographs presented at trial.
>
> However, this [c]ourt did not find that Ms. Miller's photographs compelled a different result. First, the new photos were grainy and ambiguous, and did not clearly tie Appellees' conduct to the harms allegedly suffered by the Trust. Second, as noted earlier, there really was no dispute that this line was in fact severed and that this caused the oil to leak onto the basement floor. The real issues at trial were *who* severed this fuel line and the extent of damages sustained by Mr. Kuney and the Trust as a result of the ensuing oil leak. The Appellants hung their case on the close proximity in time from when the [Appellees] did the plumbing repair in the basement and Ms. Miller discovered the oil spill, and while this [c]ourt fully considered this circumstantial evidence, ultimately this [c]ourt found Appellants' theory to be lacking, and Appellees' witnesses to be more credible.

*Id*., at 19.

Our independent review of these photographs largely comports with the trial court's summary. While the photographs vary in quality and clarity, they do not appear to provide any new information that was not present in the photographs that were presented to the court at trial. As the ultimate arbiter of fact at this trial, the court's determinations of credibility and weight of the evidence are entitled to deference. The Trust has not met its burden to

establish the court abused its discretion in concluding the Miller photographs would not have compelled a different verdict. As a result, even if the Trust properly preserved the sole issue presented in its appellate brief, it is due no relief.

Turning to Kuney's appeal, we must first address Kuney's claim that the court improperly found he did not have standing to participate in this litigation in his own right. The court found that Kuney had failed to establish "a legal justification for his involvement in this matter as a *pro se* litigant." ***Id***., at 14. The court correctly noted that Kuney's only connection to the property located at 1004 South 25th Street is that he loaned a corporation, known as Geo-Stellar Inc., the money used to purchase the property. Geo-Stellar then transferred the property to the Trust. Geo-Stellar is the only beneficiary named in the trust agreement. The court concluded that under these circumstances, "any conceivable interests [Kuney] might have in 1004 S. 25th St. flow through Geo-Stellar Inc. and the Trust, entities that must, under Pennsylvania law, be represented by attorneys." ***Id***.

Upon reviewing the trust agreement, we find that the exact nature of the Trust is unclear. The agreement identifies itself as a "declaration of trust." Agreement and Declaration of Trust, 6/29/05, at 1. It names an officer of Geo-Stellar as trustee, who "will hold title of the property on behalf of Geo-Stellar." ***Id***. The sole named beneficiary of the trust, Geo-Stellar, is given the right to all earnings and profits arising from trust property. ***See id***. Further, the

beneficiary is given the power to "convey or otherwise deal with the title to the Trust Property," and "manage and control the Trust property." *Id*., at 1-2.

Later, the agreement indicates that "[t]he objects and purposes of this Trust shall be to hold title to the Trust Property and to protect and conserve it until its sale or other disposition." *Id.*, at 5. It further explicitly disclaims any intention to create "a corporation, de facto or de jure, or a Massachusetts Trust, or any other type of business trust, or an association in the nature of a corporation, or a co-partnership or joint venture by or between the Trustee and the Beneficiaries, or by or between the Beneficiaries." *Id*.

Other provisions in the agreement provide that "full legal and equitable title to the Trust property" vests in the trustee, *id*., at 2, that no beneficiary has the power to legally bind any other beneficiary, *see id*., at 7, and that there "shall be no annual meeting of the Beneficiaries."

We cannot decipher what type of entity the Trust was intended to be, let alone what it actually is. What is clear is that Kuney has no connection to the Trust, other than having loaned the purchase money for the Trust property to the Trust's sole named beneficiary, Geo-Stellar. This relationship would render the court's conclusion that Kuney has no standing in this matter eminently reasonable.

However, as Kuney notes, the issue of his standing was waived. "Unlike personal jurisdiction, the issue of standing may be waived by a party if not

objected to at the earliest possible opportunity." ***In re Estate of Brown***, 30 A.3d 1200, 1204 (Pa. Super. 2011) (citation and internal quotation marks omitted). Bennett never objected to Kuney's presence as a party prior to the verdict. The court therefore erred in raising the issue *sua sponte* and dismissing Kuney's *pro se* filings on this ground.

However, we agree with the trial court that Kuney has otherwise waived all but one of his other claims on appeal. Any issue not raised in a post-trial motion is waived on appeal. ***See D.L. Forrey & Associates, Inc. v. Fuel City Truck Stop, Inc.***, 71 A.3d 915, 919 (Pa. Super. 2013). In his post-trial motion, Kuney did not request a new trial, judgment notwithstanding the verdict, or even the re-opening of the record. Rather, he first requested that Bennett be forced to participate in mandatory mediation of this dispute. Motion for Reconsideration of Judgment Notwithstanding the Verdict, 12/16/16, at 22 (unnumbered). Kuney has never presented any authority for his desired remedy of mandatory mediation of his claims. Further, he has completely abandoned this argument on appeal. Any issue with the court's refusal to order mandatory mediation is therefore waived. ***See Moranko v. Moranko***, 118 A.3d 1111, 1117 n.3 (Pa. Super. 2015)

In the alternative, Kuney argued in his *pro se* post-trial motion that the court should enter punitive sanctions against Bennett for not being more amenable to settling the claims in this litigation. ***See*** Motion for Reconsideration of Judgment Notwithstanding the Verdict, 12/16/16, at 23

(unnumbered). He listed this issue in Rule 1925(b) statement, and renews this argument on appeal.

Kuney contends the court erred in failing to find the allegations in the Trust's complaint sufficient to state a case for the imposition of punitive damages. Specifically, Kuney argues the evidence was sufficient to support the imposition of punitive damages because Bennett "probably knew of the discharge before leaving the job," and yet did not inform Wilson or any other party. *See* Kuney's Brief, at 61.

We review Kuney's claim pursuant to the following standards:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, as the issue... concerns a question of law, our scope of review is plenary.

*Atlantic LB, Inc. v. Vrbicek*, 905 A.2d 552, 557 (Pa. Super. 2006) (citation omitted, ellipses in original).

"Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (citations omitted). They are therefore "proper only in cases where the

- 13 -

defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Id*. (citations omitted). "A showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed." ***Phillips v. Cricket Lighters***, 883 A.2d 439, 445 (Pa. 2005) (citation omitted).

The trial court, sitting as fact-finder, found Bennett's testimony more credible than Wilson's. Further, the court found that Kuney and the Trust had failed to prove, by a preponderance of the evidence, that Bennett had severed the oil line. We see no reason why these credibility determinations constitute an abuse of the trial court's discretion. Given this predicate, there is simply no basis to impose punitive damages on Bennett.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/30/19