J-S40002-24                    2025 PA Super 108

| | | |
|---|---|---|
| JUSTIN ROBINS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRAVIS ROBINS | : | |
| | : | |
| Appellant | : | No. 464 EDA 2024 |

Appeal from the Judgment Entered February 27, 2024
In the Court of Common Pleas of Bucks County
Civil Division at No:  2021-003375

BEFORE:  STABILE, J., McLAUGHLIN, J., and LANE, J.

OPINION BY STABILE, J.:                    **FILED MAY 20, 2025**

Appellant, Travis Robins ("Travis"), appeals from the February 27, 2024, judgment entered in favor of Appellee, Justin Robins ("Justin").  We vacate.

The parties to this action are brothers.  Their mother, Rhonda Robins ("Rhonda") passed away on April 8, 2019, predeceasing her mother, the parties' grandmother, Bernice Goldstein ("Mrs. Goldstein").  The case before us is one of three actions pending between or among Justin, Travis, and Mrs. Goldstein.  In an Estate Action (the "Estate Action") pending before the Bucks County Orphans Court, Justin filed a petition against Mrs. Goldstein (Rhonda's executor) and Travis to set aside a disclaimer of Justin's rights under Rhonda's will.[1]  The parties represent that the Estate Action is stayed pending the

---

[1] The Estate Action is pending at Bucks County Orphans Court docket number 2020-0168.

resolution of an Abuse of Process Action (the "Abuse of Process Action") filed by Travis and Mrs. Goldstein against Justin that is currently pending in Philadelphia County.[2] In that action, Travis and Mrs. Goldstein allege that Justin committed an abuse of process by filing the Estate Action.

The matter before us arises from Justin's claim that Travis converted certain non-probate funds that Justin received from Rhonda. In specific, Justin, Travis, and Mrs. Goldstein were named beneficiaries on Rhonda's TransAmerica life insurance policy. Per the terms of that policy, Justin and Travis each received a check from TransAmerica in the amount of $62,418 (Justin's check was greater by one cent), and Mrs. Goldstein received a check from TransAmerica in the amount of $124,837.61. Justin and Mrs. Goldstein were equal beneficiaries of Rhonda's employee savings fund plan with Vanguard, and each received a check from Vanguard in the amount of $43,157.19. Travis was not a named beneficiary on the Vanguard account.

Justin held his proceeds from the TransAmerica policy and the Vanguard account in a Citizens Bank Account (the "Citizens Bank Account") jointly owned with his wife, Candide Kanyamuneza ("Candide"). On July 5, 2019, Justin withdrew $94,653.49 from the Citizens Bank Account and deposited it into a new Wells Fargo Account (the "Wells Fargo Account") to be owned jointly by Justin and Travis. Subsequently, Justin voluntarily signed paperwork to

_____

[2] The Abuse of Process Action is pending in the Philadelphia County Court of Common Pleas, April Term 2022, No. 220400218.

remove himself as an owner of the Wells Fargo Account, leaving Travis as sole owner.

The primary issue in dispute is Justin's motive for the transfers. At trial and in their briefs to this Court, the parties tell a story of intra-family intrigue. While the veracity of any part of the story does not affect the result we reach, we offer a condensed summary for context. The parties portray Rhonda as protective of the family's money and mistrustful of her son's spouses. Rhonda did not approve of Candide, and Justin married her privately on June 24, 2018, without informing other family members. Rhonda, shortly before her sudden death from a stroke, announced in front of several members of the Robins family her intent to disinherit Justin because of the marriage, but she died without having done so. Regardless, Justin subsequently executed a qualified disclaimer with regard to his status as a beneficiary of Rhonda's will. The validity of that disclaimer, which Justin claims he signed because Travis told him that doing so would honor Rhonda's desire to protect Justin's assets from Candide, is the subject of the Estate Action.

Regarding the funds currently at issue, it appears that Candide promptly withdrew $11,000.00 from the Citizens Bank Account upon its creation with the proceeds of Justin's share of the Trans American policy and Vanguard account. Travis claims that Justin called and asked how he could protect the remainder of the money in the Citizens Bank Account (that being the $94,653.49 presently in dispute) from Candide. Justin claims Candide used

the $11,000 to cover their child's day care expenses. Regardless, the record confirms that Justin subsequently withdrew the remainder of the money in the Citizens Bank Account and deposited it into the newly created Wells Fargo Account jointly owned by Travis and Justin. Travis and Justin named the account "Mulder Scully," a reference to the X-files television series, apparently so that Candide would not be able to find the account. In Justin's telling, the transfer was made at Travis' behest because Travis did not trust Candide, and because Travis believed Candide was abusing Justin. The removal of Justin as owner of the account was to be the final step of protecting the money from Candide. Justin claims he trusted Travis with the money but that their relationship soured, culminating in the instant action, the Estate Action and the Abuse of Process Action. Travis claims Justin said he wanted nothing to do with the money in the Wells Fargo Account. Travis thereafter used the funds in the Wells Fargo Account for his own benefit.

Justin commenced this action against Travis on June 24, 2021, alleging causes of action for fraudulent misrepresentation, conversion, breach of contract, and unjust enrichment. Prior to trial, Justin and Travis jointly sought to stay this matter pending the outcome of the Abuse of Process Action. When the trial court denied that motion, Travis moved to transfer this case to Philadelphia County and consolidate it with the Abuse of Process Action. The trial court also denied that motion. The parties, without having conducted discovery in this case, proceeded to a bench trial on October 30 and 31, 2023,

limited to conversion and unjust enrichment, with Justin having abandoned the other causes of action. On January 9, 2024, the trial court entered a verdict in favor of Justin in the amount of $94,653.49, plus interest. The trial court denied Travis's post-trial motions on January 31, 2024. The verdict was reduced to Judgment on February 27, 2024. This timely appeal followed. Travis presents three questions:

1. Was [Travis] entitled to a bench verdict in his favor, since [Justin] failed to submit evidence sufficient to make out a *prima facie* case on his claims?

2. Alternatively, was [Travis] entitled to a new trial because the verdict in favor of [Justin] was against the weight of the evidence? ]

3. Pursuant to Pa.R.Civ.P. 213.1, should the case at bar have been transferred and consolidated with the [Abuse of Process Action]?

Travis's Brief at 7.[3]

Travis's first assertion of error challenges the sufficiency of the evidence in a non-jury trial.

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

_____

[3] The third question was not in Travis's statement of questions presented and is therefore waived for purposes of appeal. Pa.R.A.P. 1925(b)(4)(vii).

*Century Indem. Co. v. OneBeacon Ins. Co.*, 173 A.3d 784, 802 (Pa. Super. 2017) (citations omitted), *appeal denied*, 190 A.3d 1129 (Pa. 2018). In essence, a challenge to the sufficiency of the evidence in a civil trial is a claim that the trial court erred in denying a motion for judgment notwithstanding the verdict ("JNOV"). *Atlantic LB, Inc. v. Vrbicek*, 905 A.2d 552, 557 (Pa. Super. 2006). JNOV is appropriate where the movant is entitled to judgment as a matter of law, or where no two reasonable minds could disagree that, given the evidence, a verdict should have been entered in favor of the movant. *Id.* The trial court's legal conclusions are not binding on this Court. *Id.*

The trial court found that Justin sufficiently proved the elements of conversion and unjust enrichment. We begin with the former.

> Conversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification. **A plaintiff has a cause of action in conversion if he or she had actual or constructive possession of a chattel at the time of the alleged conversion.** Money may be the subject of conversion.

*Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. 2003) (emphasis added), *appeal denied*, 852 A.2d 313 (Pa. 2004).

The undisputed evidence is that Justin voluntarily transferred money from the Citizens Bank account that he owned jointly with Candide into the Wells Fargo Account that he owned jointly with Travis. Justin then voluntarily removed himself as an owner of the Wells Fargo Account, leaving Travis as the sole owner. The alleged conversion—Travis's using the money for his own

benefit—happened afterward. Thus, the record conclusively establishes that Justin was not in possession of the money in the Wells Fargo Account at the time of the alleged conversion. Travis was therefore entitled to judgment as a matter of law on the conversion claim, and the trial court committed an error of law in finding otherwise.

Next, we consider Justin's unjust enrichment claim.

> To succeed on an unjust enrichment claim, the plaintiff must prove: (1) benefits [were] conferred on [the] defendant by [the] plaintiff; (2) appreciation of such benefits by [the] defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for [the] defendant to retain the benefit without payment of value. **In determining if the doctrine applies, our focus is not on the intention of the parties**, but rather on whether the defendant has been unjustly enriched.

*Liberty Mut. Grp., Inc. v. 700 Pharmacy, LLC*, 270 A.3d 537, 554 (Pa. Super. 2022) (internal citations and quotation marks omitted; emphasis added). Stated another way, "[u]njust enrichment is the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and or for which the beneficiary must make restitution." *Roethlein v. Portnoff Assocs., Ltd.*, 81 A.3d 816, 825 n.8 (Pa. 2013). "An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law." *American and Foreign Ins. Co. v. Jerry's Sport Ctr.*, 2 A.3d 526, 531 n.7 (Pa. 2010).

Unjust enrichment claims commonly arise where a party provides a service for which compensation is ordinarily expected. For example, where a

tenant has reasonable expectations of long-term occupancy in real estate owned by another and makes substantial improvements to the property with the knowledge and implied consent of the owner, the tenant is entitled to compensation under a theory of unjust enrichment. ***Chesney v. Stevens***, 644 A.2d 1240 (Pa. Super. 1994).

Contrariwise, the existence of a familial relationship can give rise to the presumption of gratuitous action. In ***Mitchell v. Moore***, 729 A.2d 1200 (Pa. Super. 1999), *appeal denied*, 751 A.2d 192 (Pa. 2000), the defendant's live-in romantic partner provided extensive labor and services on the defendant's farm during the course of their thirteen year relationship. When the relationship ended, the plaintiff filed an unjust enrichment action, seeking compensation for the value of his services. This Court explained that in cases of blood relationships or family-like relationships, the implication of an intention to pay for work done does not arise. ***Id.*** at 1204 (citing ***Brown v. McCurdy***, 122 A. 169 (Pa. 1923).

The defendant in ***Michell*** admitted that the plaintiff was essentially a part of his family, and thus the presumption of gratuitous services arose. ***Id.*** Thus, for the plaintiff to prove that the defendant had been unjustly enriched by his services, the plaintiff needed to provide "convincing evidence establishing that plaintiff's services were not gratuitous." ***Id.*** Because plaintiff lived rent free in a large farmhouse and because the defendant paid all of the plaintiff's bills for him, this Court concluded that "[t]he nature and

amount of benefits that plaintiff received from living at [defendant's] farm rebuts any presumption that the benefit conferred on [defendant] was unjust. *Id.* Thus, despite plaintiff's testimony that the defendant promised him compensation for his services and a future devise of property in his will (*see id.* at 1202), the circumstances of the relationship, rather than the evidence of the parties' intent, governed the outcome, and this Court vacated the judgment in favor of the plaintiff. *Id.* at 1206.

The instant case, unlike **Chesney** and **Mitchell**, does not involve the provision of services. Because of the absence of provision of services, the presumption of an intent to pay cannot arise on that basis. Further, the parties here are blood relations. While **Mitchell** analyzed gratuitous provision of services between parties in a familial relationship, whereas the instant involves only an intra-family transfer of money, we find the **Mitchell** Court's analysis of gratuitous action instructive.

Limiting our review to the circumstances of the transaction rather than the evidence of the parties' intent, as we are required to do in analyzing an unjust enrichment claim, we discern nothing to demonstrate anything more than a gratuitous transfer of money between brothers. Justin voluntarily transferred money out of an account he owned jointly with his wife and into the Wells Fargo Account he owned jointly with Travis. Then, he voluntarily removed himself as an owner of the Wells Fargo Account. In short, he did

everything he could to voluntarily disavow any interest in the transferred money.

Contrary to governing law, the trial court's finding of unjust enrichment rests **entirely** on its analysis of the parties' intent rather than the circumstances of the transaction:

> The testimony at trial and the court's determination regarding credibility made it abundantly apparent Justin never **intended** his money to be a gift to Travis. Furthermore, it was clear to this court that Travis intended to persuade Justin regarding the establishment of the account to 'protect' money from Candide. Not only was that the intent of Travis when the accounts were established, it was also intended by Rhonda that Justin would have money for his benefit and support himself after her death. **Although the intent of the parties is not the focus of the analysis in an unjust enrichment case, it did substantially inform the court as to the credibility of witnesses.**
>
> […]
>
> While Travis was a beneficiary to the TransAmerica insurance, he was not a listed beneficiary to Rhonda's Vanguard retirement account. Whether the money was wrongfully secured or passively received by Travis, Travis's actions resulted in his receiving twice what he was due from the TransAmerica insurance and $32,234.68 which he was not due to receive from the Vanguard account. Travis ultimately received the funds which were [Justin's], and thereafter spent the money for his exclusive benefit.

Trial Court Opinion, 4/1/24, at 7-8 (emphasis added).

Thus, the trial court explicitly relied on the parties' intent, albeit under the guise of making credibility findings. Credibility findings are within the province of the fact finder, but the ultimate end of the trial court's credibility findings in this case was to discern the parties' intent for the money in dispute.

- 10 -

Further, the trial court seemingly tried to effectuate what it believed to be Rhonda's intent for the TransAmerica Insurance money and the Vanguard account. The issue of Rhonda's intent is not properly before us and, in any event, there is no dispute that Vanguard and TransAmerica disbursed the funds to the named beneficiaries as designated by Rhonda. What the beneficiaries did with the money afterward is their own affair. And even if the trial court was correct in believing that Justin was the hard-luck victim of having been duped by his brother, that finding does not support a verdict in Justin's favor on the unjust enrichment claim because the trial court arrived at that finding by analyzing the parties' intent.

To summarize, this case does not involve the provisions of goods or services for which the provider would ordinarily be paid, as is commonly the case in unjust enrichment actions. The circumstances of the transfers of the money indicate nothing other than a gratuitous intra-family transfer of money. The trial court arrived at the contrary conclusion based entirely on its assessment of the parties' intent, which was improper under the law of unjust enrichment.

Based on the foregoing, we conclude that Travis was entitled to judgment as a matter of law on Justin's unjust enrichment claim. The trial court erred in concluding otherwise. Because the trial court reached its verdict in error, we vacate the judgment entered thereon.

Judgment vacated. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/20/2025