J-S01025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HEATHER L. JACOBY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD G. JACOBY, JR. | : | |
| | : | |
| Appellant | : | No. 972 MDA 2021 |

Appeal from the Order Entered June 18, 2021
In the Court of Common Pleas of Berks County Civil Division at No(s):
16-16933

BEFORE: BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:　　　　　　　　**FILED: MARCH 1, 2022**

Richard G. Jacoby, Jr. (Father) appeals from the trial court's order that restricted the speech of his spouse, non-party Brena Jacoby (Stepmother).[1] Father contends that the trial court's order improperly restricted non-party Stepmother's speech on a social media site. We vacate the order to the extent the order affects Stepmother.

By way of background, we note that this appeal is one of several involving the parties' custody dispute. *See, e.g.*, *Jacoby v. Jacoby*, Nos.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Under Superior Court Internal Operating Procedure Rule 65.44, the "names of the parties in a caption for an appeal from a divorce, equitable distribution, custody, visitation or child support decision shall include the full names of the parties if listed as such in the caption of the trial court's docket. . . . In such documents, the name of the child shall be initialized or the document shall refer to the child as 'Child.'" Pa. Super. IOP 65.44.

100 MDA 2021, 131 MDA 2021, 2021 WL 5355739, *1 (Pa. Super. filed Nov. 17, 2021) (**Jacoby III**) (unpublished mem.) (remanding for calculation of counsel fees); **Jacoby v. Jacoby**, No. 1379 MDA 2020, 2021 WL 5194091 (Pa. Super. filed Nov. 9, 2021) (unpublished mem.); **H.L.J. v. R.G.J., Jr.**, No. 2014 MDA 2019, 2020 WL 4334055 (Pa. Super. filed July 28, 2020) (unpublished mem.), *appeal denied*, 239 A.3d 1086 (Pa. 2020). In short, the trial court granted Mother's petition to modify the May 2017 custody order that led to multiple appeals. **See generally Jacoby III**, 2021 WL 5355739 at *1.

The instant appeal concerns an emergency petition that Mother filed on June 16, 2021. Therein, Mother sought to enforce the court's modified custody order, remove Child from Stepmother's home, and place Child with Berks County Children and Youth Services (CYS). Mother's Emergency Pet., 6/16/21. The trial court held a telephone hearing on June 17, 2021. At the hearing, Mother's counsel notified the court for the first time about a post that Stepmother had made on Facebook.[2] Specifically, Mother's counsel explained:

---

[2] We quote the Facebook post as follows:

> OK…. I'm going to lay everything out for ppl to know. My husband [Father] is currently in BCP on indirect civil contempt pertaining to child custody. The judge won't release [Father] until our minor child attends four days of this out of state program with Linda Gottlieb. The judge did not set a monetary value. Our minor child is afraid of her Mother (she lives out of state) and has been fighting not to go to this out-of-state program with her Mother to

*(Footnote Continued Next Page)*

"Your Honor, there was a Facebook post by [Stepmother] basically saying that

they've complied with all these orders, that this [c]ourt has gone rogue, that

she keeps saying 'our child.' I mean, this is pure alienation. She should not

_____

> fix their relationship. There have been many attempts to have our minor child attend this program, to no avail. Her Mother had her attorney request that our child's Father be incarcerated until our child attends at least 4 days of this out of state program. This happened on Monday. On Monday my husband was incarcerated. On Monday, CYS came to my house, and the State Troopers. Our minor child is still with me as she fought not to go. How much emotionally [sic] and mental abuse can a child go through. I cooperated 100%. This has been going on for years (2016). Our minor child has not been alone with her Mother in over 5 years. She is terrified to go with her. At this point, we have a biased Judge. He basically went rogue. I need help. I have 2 great attorneys, but no matter what we do the judge sides with the other side. They are claiming parental alienation. There is no legal record of parental alienation. Now anyone that knows me or my husband knows we aren't those ppl. We have encouraged, positive affirmations etc.. [sic] this doesn't matter to our minor child because the child is in fear. As some know I co-parent with my ex. We don't have a court order or a child support order. We get along great. This has been a nightmare for us all, but especially for our child who has never been without [Father] in all of our child's life. We have been accused of interfering with our child going to this program. We aren't interfering. Our child is fighting it. How much more abuse can we all take, especially our child.
>
> My husband owns a law firm and it is taking a hit because he is incarcerated for no reason.
>
> We need help. We need help immediately.

Ex A. to Father's Appl. for Stay, 8/10/21. This Court denied the application to stay on August 11, 2021. Order, 8/11/21.

be involved in this at all." N.T. Hr'g, 6/17/21, at 4. In contrast, Father's

counsel asserted that the post did not contain any information that was

material to the custody dispute. *Id.* at 8.

> Thereafter, the following exchange occurred:
>
> THE COURT: All right. And as far as any Facebook posts, I have not read more than two words of the Facebook – copy of the Facebook post that was sent to my office this morning. But I am also going to order that none of the parties, and [Stepmother], make no more public comments about this child or this child's situation under the possibility of finding her and whoever else that's involved in this case in contempt.
>
> [Father's counsel]: Your Honor, I have already instructed [Stepmother] not to do so further and she agreed with my instruction.[3]
>
> THE COURT: . . . I am also going to require that [Stepmother] is ordered to remove those posts forthwith.
>
> [Father's counsel]: I'll convey that to her immediately, Your Honor.

*Id.* at 13-14. The hearing concluded shortly thereafter without any objection

by Father's counsel to the trial court's directives regarding the Facebook post.

*See id.* at 1-15.

Following the hearing, the trial court issued an order that granted

Mother's petition and stated, in part, as follows:

> 8. [Father] and [Stepmother] shall NOT use online or web-based communications to discuss this matter.

---

[3] Nothing in the record reflects that Father's counsel represents Stepmother.

9. [Father] or [Stepmother] shall remove the Facebook post which contains information related to [Child] and shall not post any discussion or information regarding [Child's] custody or other information regarding [Child].

Order, 6/18/21, at ¶¶ 8-9.[4]

On July 8, 2021, Father filed a notice of appeal from the June 18, 2021 order. Notice of Appeal, 6/18/21.[5] Father also contemporaneously filed a Pa.R.A.P. 1925(a)(2)(i) statement raising multiple issues, including two claims solely pertaining to Stepmother.[6] The trial court filed a Rule 1925(a) opinion that did not address the issues raised in Father's Rule 1925(a)(2)(i) statement.[7]

_____

[4] The order was dated June 17, 2021, and served on June 18, 2021. The parties, record, and trial court use the June 17, 2021 date.

[5] The notice of appeal reflects that only Father appealed and Father's counsel only represents Father. *Id.* Stepmother did not file a notice of appeal.

[6] Specifically:

> 3. Whether the trial court committed an error of law, abuse of discretion, and factual error when [it] ordered non-party [Stepmother] to not use web-based communications to discuss the matter and ordered her to remove a post on Facebook?
>
> 4. Whether the trial court committed an error of law and abuse of discretion when it ordered [Stepmother] to make no further posts on Facebook relating to the Child or the custody matter?

Rule 1925(a)(2)(i) Statement, 7/8/21.

[7] Because of the parties' litigiousness, the trial court had to prepare numerous Rule 1925(a) opinions for multiple appeals. The instant Rule 1925(a) opinion, however, was unresponsive to the issues identified in Father's Rule
*(Footnote Continued Next Page)*

Before stating the issue, we address the appealability of the instant order. In **Z.P. v. K.P.**, --- A.3d ---, ---, 2022 PA Super 6, 2022 WL 54492 (Pa. Super. filed Jan. 6, 2022), the Court explained:

> [T]he appealability of an order directly implicates the jurisdiction of the court asked to review the order. Pennsylvania law makes clear [that a]n appeal may be taken from: (1) a final order or an order certified as a final order; (2) an interlocutory order as of right; (3) an interlocutory order by permission; or (4) a collateral order.
>
> A final order in a civil case is one that disposes of all the parties and all the claims; or is entered as a final order pursuant to the trial court's determination under Rule 341(c). A custody order will be considered final and appealable only after the trial court has completed its hearings on the merits and the resultant order resolves the pending custody claims between the parties

**Z.P.**, 2022 WL 54492 at *7 (formatting altered and most citations omitted). An order denying a petition to enforce a custody order is final and appealable. **See Flannery v. Iberti**, 763 A.2d 927, 927 n.1 (Pa. Super. 2000); **Basham v. Basham**, 713 A.2d 673, 674 (Pa. Super. 1998).

Here, the instant order granted Mother's petition to enforce the court's prior custody order. Similar to the petitions to enforce at issue in **Flannery** and **Basham**, Mother's petition to enforce was granted by the trial court. **Cf.**

---

1925(a)(2)(i) statement. Although we sympathize with the trial court's apparent frustration at having to prepare numerous Rule 1925(a) opinions, the trial court did not detail any of its legal reasoning in support of the challenged provisions of the June 18, 2021 order. **See generally** Trial Ct. Op., 10/1/21, at 1-6. We add that the trial court did not explain how it could exercise jurisdiction over non-party Stepmother.

*Flannery*, 763 A.2d at 927 n.1; *Basham*, 713 A.3d at 674.  Because this Court has held that orders denying petitions to enforce were considered final and appealable orders, it follows that an order granting a petition to enforce would also be considered final and appealable.  *Cf. Flannery*, 763 A.2d at 927 n.1; *Basham*, 713 A.3d at 674.  We add that there are no outstanding claims between Father and Mother because the trial court previously resolved all outstanding custody claims other than Mother's petition to enforce the prior custody order.[8]  *See generally* Pa.R.A.P. 341; *Z.P.*, 2022 WL 54492 at *7. Because the instant order is final and appealable, we next state Father's issue and summarize his argument.

---

[8] We acknowledge that the *Jacoby III* Court remanded to the trial court for calculation of reasonable appellate counsel fees for three appeals, excluding the instant appeal.  *Jacoby III*, 2021 WL 5355739 at *9.  Typically, courts have construed an award of counsel fees as ancillary to the underlying claims. *Cf. Miller Elec. Co. v. DeWeese*, 907 A.2d 1051, 1057 (Pa. 2006); *Carmen Enters., Inc. v. Murpenter, LLC*, 185 A.3d 380, 389 (Pa. Super. 2018) (explaining that when "judgment is entered in the underlying litigation before the trial court rules on a motion for counsel fees, the order on counsel fees is appealable when entered without the need for entry of judgment on it").  We do not construe the *Jacoby III* Court's remand for an award of appellate counsel fees as rendering the instant order interlocutory and unappealable. *See Miller Elec.*, 907 A.2d at 1057.

When Father filed the notice of appeal, he was challenging the order on behalf of himself and Stepmother.  Father had not yet withdrawn his own claims.

Father raises one issue on appeal: "May a trial court issue an order censoring speech of non-party Stepmother on social media relating to criticism of the trial court judge in the action[?]" Father's Brief at 8.[9]

For his sole issue, we summarize Father's sparse two-paragraph argument as follows. Father initially notes that the trial court was aware that Stepmother's Facebook post criticized the court. *Id.* at 23. Father reasons that the trial court's communications restriction order is subject to strict scrutiny and that "[a] blanket restriction on speech on social media, undoubtedly the primary forum for political speech in this Commonwealth, Country, and presumably the World, is not narrowly tailored." *Id.* at 22-23. "For this reason," Father summarily concludes, "the restriction on [S]tepmother's speech should be stricken . . . ." *Id.* at 23.[10]

Before addressing the merits of Father's argument, Father's issue itself raises several questions, including whether Father could raise an argument on

---

[9] On December 7, 2021, Father filed an application with this Court to, among other things, withdraw eight of his nine issues on appeal, which this Court granted on December 9, 2021. Order, 12/9/21; Father's Appl., 12/7/21.

[10] Father's two-paragraph argument for Stepmother is terse. To the extent that Father has cited to applicable authority, he failed to identify how the holdings in the cases are pertinent or how they should inform our analysis of Stepmother's First Amendment claim. *See Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (stating, "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant" (citation omitted)).

behalf of non-party Stepmother and whether the trial court had jurisdiction to issue an order against non-party Stepmother.

In *In re Estate of Brown*, 30 A.3d 1200 (Pa. Super. 2011), this Court addressed a similar issue arising from the trial court's decree, which surcharged the appellant and her non-party husband. *Brown*, 30 A.3d at 1202. The appellant appealed, arguing that the trial court erred in surcharging the non-party. *Id.* at 1204.

In resolving the appellant's claim, the *Brown* Court first examined whether the appellant had standing[11] to challenge the trial court's exercise of personal jurisdiction over the non-party. *Id.* The *Brown* Court explained that a court cannot *sua sponte* raise the issue of standing and a party may also waive that issue. *Id.* at 1204-05 (discussing *Thompson v. Zoning Hearing Bd. of Horsham Twp.*, 963 A.2d 622 (Pa. Cmwlth. 2009), and *In*

---

[11] In *Fumo v. City of Phila.*, 972 A.2d 487 (Pa. 2009), our Supreme Court defined standing as follows:

> In seeking judicial resolution of a controversy, a party must establish as a threshold matter that he has standing to maintain the action. In Pennsylvania, the requirement of standing is prudential in nature. A challenge to the standing of a party to maintain the action raises a question of law. As this Court explained . . . , the core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution of his challenge.

*Fumo*, 972 A.2d at 496 (citations omitted and formatting altered).

*re DeYoung*, 903 A.2d 1164 (Pa. 2006)). Because no party challenged whether the appellant could raise an issue on behalf of the non-party, the *Brown* Court held that all parties waived the issue of standing. *See id.* at 1205.

Here, as in *Brown*, neither Father nor Mother raised an issue as to whether Father had standing to challenge the communications restriction order on behalf of non-party Stepmother. *See id.* Therefore, like the *Brown* Court, in which the Court held that because the parties waived any challenges to standing, the appellant had standing to argue on behalf of the non-party, we similarly conclude that Father has standing to raise arguments on behalf of non-party Stepmother. *See id.*

Next, we address whether the instant trial court could exercise jurisdiction over Stepmother. The *Brown* Court also addressed whether the trial court had authority to issue an order against a non-party. *Brown*, 30 A.3d at 1205. The *Brown* Court reasoned that a "court must have personal jurisdiction over a party to enter a judgment against it. Action taken by a court without jurisdiction is a nullity." *Id.* (citation omitted); *cf. Commonwealth v. Koehler*, 229 A.3d 915, 928 (Pa. 2020) (observing that "resolving whether a court has [subject matter] jurisdiction over a certain type of claim does not resolve whether the court has the ability to grant the relief requested" (citation omitted)). The *Brown* Court analogized its case to *Mayer v. Garman*, 912 A.2d 762 (Pa. 2006), and held as follows:

- 10 -

we hold the trial court exceeded its authority when it assessed a surcharge against [the non-party], who was not named as a party to the suit, served with process, or given the opportunity to contest the surcharge. The . . . trial court, similar to the trial court in *Mayer*, *sua sponte* haled [the] non-party[] into court and levied a surcharge against him. *Cf. Mayer*, 912 A.2d at 764. Analogous to the petitioner in Mayer, [the non-party] did not receive original service of process. *Cf. id.* The trial court, similar to the trial court in *Mayer*, cited no procedural rule permitting it to join [the non-party] without service of process. *Cf. id.* Additionally, as in *Mayer*, [the non-party] had no opportunity to object to the court's exercise of personal jurisdiction over him. *Cf. id.* at 765. Finally, . . . similar to the petitioner in *Mayer*, [the non-party did not] have an opportunity to challenge . . . the imposition of the surcharge. *Cf. id.* at 765-66. Accordingly, we hold the trial court improperly exercised jurisdiction over [the non-party] without proper service of process. Thus, we vacate the portion of the trial court's decree imposing a surcharge against [the non-party].

*Brown*, 30 A.3d at 1205-06; *see also Belliveau v. Phillips*, 207 A.3d 391, 395 (Pa. Super. 2019) (holding that "[a]bsent valid service, a court lacks personal jurisdiction over a party and is powerless to enter judgment against" it (citation omitted)); *Mayer*, 912 A.2d at 765 (explaining that the issue of the trial court's "personal jurisdiction over [the non-party] and authority . . . stem[s] from the more central question [of] whether the trial court acted *ultra vires* in purporting to *sua sponte* join [the non-party] to the litigation without service of process").[12]

---

[12] We acknowledge that personal jurisdiction is a waivable issue. However, a **party** must waive it. *Wagner v. Wagner*, 768 A.2d 1112, 1119 (Pa. 2001) (stating that the "requirement of personal jurisdiction flows from the Due Process Clause and restricts judicial power as a matter of individual right. A **party** may insist that the right be observed or he may waive it" (emphasis

*(Footnote Continued Next Page)*

Turning to the instant case, we examine the "more central question" of whether the trial court had personal jurisdiction over non-party Stepmother to enter an order against her, because "[a]ction taken by a court without jurisdiction is a nullity." **See Mayer**, 912 A.2d at 765; **Belliveau**, 207 A.3d at 395; **Brown**, 30 A.3d at 1205. Like the trial courts in **Brown** and **Mayer**, the instant trial court *sua sponte* pulled non-party Stepmother into this court proceeding by issuing an order against her without addressing the absence of original service of process for Stepmother. **See Brown**, 30 A.3d at 1205-06 (discussing **Mayer**, 912 A.2d at 765). Identical to the non-party in **Brown**, Stepmother was not a party to the suit between Father and Mother, she was not served with process, and she had no notice or opportunity to challenge the communications restriction order. **See Brown**, 30 A.3d at 1205-06.

Although personal jurisdiction is a waivable issue, non-party Stepmother did not have notice nor an opportunity to challenge the order, and the parties did not address the trial court's exercise of personal jurisdiction over her. **See**

---

added and citations omitted)); **accord Mallory v. Norfolk S. Ry. Co.**, ---
A.3d ---, ---, 3 EAP 2021, 2021 WL 6067172, *2 (Pa. filed Dec. 22, 2021)
(holding that "consent to jurisdiction by waiving one's due process rights is an
independent basis for jurisdiction, assuming that the consent is given
voluntarily" (citation omitted)); **see also Suffolk Const. Co. v. Reliance
Ins. Co.**, 221 A.3d 1205, 1208 n.1 (Pa. 2019); **see generally Ins. Corp. of
Ireland, Ltd. v. Compagnie des Bauxites de Guinee**, 456 U.S. 694, 702-
03 (1982) (noting that "the test for personal jurisdiction requires that the
maintenance of the suit not offend traditional notions of fair play and
substantial justice" (citation omitted and formatting altered)).

***Brown***, 30 A.3d at 1205-06; ***see also Wagner***, 768 A.2d at 1119. Like the ***Brown*** Court, which held that the trial court improperly exercised jurisdiction over the non-party and therefore had no authority to surcharge the non-party, we similarly hold that the instant trial court had no personal jurisdiction over non-party Stepmother and therefore no authority to impose a communications restriction order against her. ***See Brown***, 30 A.3d at 1205-06; ***accord Belliveau***, 207 A.3d at 395. For these reasons, because the trial court committed legal error, we vacate the order to the extent the order identifies Stepmother, and because Father withdrew all of his other claims as discussed herein, we affirm in all other respects.

Order vacated in part and affirmed in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/01/2022